**John D. HEMENWAY, Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COMPEN-
SATION BOARD, Respondent.**

No. 8222.

District of Columbia Court of Appeals.

Argued Sept. 25, 1974.

Decided Oct. 17, 1974.

Rehearing and Rehearing en Banc
Denied Nov. 20, 1974.

John D. Hemenway, pro se.

George A. Ross, Washington, D.C., for respondent.

Before REILLY, Chief Judge, and KERN and GALLAGHER, Associate Judges.

REILLY, Chief Judge:

This petition for review draws into issue the construction given by the District Unemployment Compensation Board to a 1966 Act of Congress [1] making employees whose services have been terminated by the federal government eligible for payments under state unemployment compensation laws under certain conditions. In this case, the Board determined that because the Department of Defense had certified that the last place of federal employment of the claimant-petitioner was at the Pentagon, situated in Arlington, Virginia, he was not entitled to benefits in the District as his wages had been "assigned" to the Commonwealth of Virginia pursuant to the provisions of 5 U.S.C. § 8504.

As this is the first time this court has had occasion to pass upon any issue raised by the impact of the 1966 Act upon the administration of the District unemployment compensation law, a brief description of the Federal Act is in order. Although the original Social Security Act of 1935 gave the states wide latitude in the formulation of unemployment compensation statutes, these statutes—including the one enacted by Congress for the District of Columbia —because of the standards in the national act, were designed to protect only employees of private employers covered by

1. Act of Sept. 6, 1966, Pub.L. No. 89–554, 5 U.S.C. §§ 8501–8525, 80 Stat. 585.

the tax imposed by the state law. Thus, whether the state adopted a pooled fund plan or a merit rating system, the source of payments to unemployed claimants was the taxes collected by the particular state itself from persons falling within the coverage of its own act. If a resident of one state commuted to work in another and was then laid off, his rights to unemployment compensation including the rates of benefit depended upon the law of the state of his place of last employment, not the state of residence.

When Congress ultimately decided to extend the principle of unemployment compensation to employees of the United States, it was aware that the exemption of the federal government from state unemployment compensation taxes would unfairly burden, and perhaps exhaust, state funds unless it reimbursed the states for the expense of making payments to federal personnel. Consequently it included in the 1966 Act a provision for assigning for credit purposes the federal service and wages to the state where the claimant had his last official federal station prior to filing his first claim (5 U.S.C. § 8504) and advancing or reimbursing the cost of payments to federal claimants (5 U.S.C. § 8505) to states or state agencies which had entered into agreements with the Secretary of Labor for making such payments.

Section 8502 of this same title, which authorized such agreements, provided that the compensation paid by the signatory state agency, acting as an agent of the United States, should be in the same amount and under the same terms and conditions as would have been payable under state law had the federal wages and service assigned to the state in his behalf been included as wages and employment by that particular state law. The District Board was one of the state agencies which entered into such an agreement and is consequently bound in performing it by all the relevant provisions of 5 U.S.C. §§ 8501–8508 inclusive, as well as the regulations the Secretary of Labor was authorized to proscribe by these sections of the code.

This was the statutory framework upon which petitioner—a high salaried civilian employee of the Department of Defense—filed a claim with the District Board shortly after he had been separated from employment on April 13, 1973. The claim agent then sent the requisite form [2]— "Request for Wage and Separation Information"—to the Defense Department. The form was filled out by a finance and accounting officer and on the basis of this information the claim was rejected. The form listed as claimant's place of employment, the word "Pentagon", and his duty station as Arlington, Va.[3]

Petitioner appealed and was afforded a hearing before an appeals examiner. A transcript of this hearing and the written findings and conclusions of the examiner are in the record. The examiner found that his agency was bound by the federal employing agency's "finding" that the last official station was the Pentagon and that because this installation is located in Virginia and not in the District, the Board had no authority to hold petitioner entitled to benefits in this jurisdiction. Petitioner appealed to the Board itself, which affirmed the examiner.

In this court, petitioner has raised virtually the same objections urged before the agency, viz., that because he was a District resident and taxpayer both during and after his employment by the Defense Department, he was entitled to compensation un-

---

2. Form ES–931, prescribed by regulations of the Secretary of Labor under the 1966 Act, 20 C.F.R. 609.6. Whenever a claim is received, it is the practice, irrespective of whether public or private employment is the base, for the agency to request a similar report from claimant's last employer before making any preliminary determination.

3. The instructions in the form for answering the "duty station" question reads: "Enter State of this person's last employment with your agency."

der the D.C. Act. He does not dispute the fact that his last official station was the Pentagon (apparently he regularly reported for work in that building) but contends that the Department acted unfairly and capriciously in reporting that such building was located in Virginia inasmuch as the letterheads on the official stationery of the Secretary and Assistant Secretaries of Defense identify their mailing address as a Washington, D.C. postal zone. He also argues that because the Pentagon complex is a federal reservation "adjacent" to the District Court of Columbia, it could not properly be described as situated in Arlington, Virginia, and that the effect of such a ruling forced him to have recourse to a state (Virginia) where the rate of unemployment compensation was significantly lower than the rate prescribed by the D.C. statute.[4]

None of these contentions has merit. It is common knowledge that postal zones frequently cross state or municipal boundaries and that many federal agencies are assigned particular code numbers of their own. Plainly the Pentagon is not located in the District, for although Arlington and Fairfax counties are part of the metropolitan area, D.C.Code 1973, § 47–604, the District itself does not include land beyond the high-water mark of the Potomac on the Virginia bank of that river. D.C. Code 1973, § 1–101. The suggestion that county authorities might have had little or no police jurisdiction over a federal reservation like the Pentagon is irrelevant, for this legal principle applies to some extent to all federal installations throughout the country. This does not mean that they are subject to District of Columbia law.

Accordingly it is apparent from the express terms of 5 U.S.C. § 8504 that the Defense Department had no other choice than to assign petitioner's federal service and wages to Virginia, the state where his last duty station was located. It is equally obvious from the terms of 5 U.S.C. § 8506(a)[5] that a state agency has no authority to set aside a federal agency's certification with respect to the last official duty station. Accordingly the Board made no error in its final determination.

Affirmed.

4. During the interval between the first rejection of his D.C. claim and the date we heard this case, petitioner did file a claim in Virginia and informed this court that on appeal before the state agency he had been awarded compensation under the Virginia statute.

5. The Board also relied in part on the regulations of the Secretary of Labor published in 20 C.F.R. 609.18, which make the findings on Form ES–391 final and conclusive unless corrected by the employing agency itself.