## STATE OF MARYLAND *v.* STATE OF WEST VIRGINIA.

### ON SETTLEMENT OF DECREE.

No. 1, Original.    Forms of decree and briefs submitted April 20, 1910.—
Decree settled May 31, 1910.

Length of time that raises a right by prescription in private parties, likewise raises such a presumption in favor of States.

Consistently with the continued previous exercise of political jurisdiction by the respective States, Maryland has a uniform southern boundary along Virginia and West Virginia at low-water mark on the south bank of the Potomac River to the intersection of the north and south line between Maryland and West Virginia.

The division of costs between States in a boundary dispute is one governmental in character in which each party has not a litigious, but a real, interest, for the promotion of the peace and good of the communities, and all expenses including those connected with making the surveys should be borne in common and included in the costs equally divided between the States.

Decree in 217 U. S. 1, settled.

THE facts involved in this case are stated in the opinion of the court delivered February 21, 1909, *ante*, p. 1; the particular facts involved in the settlement of the decree are stated in the opinion following.

*Mr. Isaac Lobe Straus*, Attorney General of the State of Maryland, for Maryland.

*Mr. William G. Conley*, Attorney General of the State of West Virginia, and *Mr. George E. Price* for West Virginia.

MR. JUSTICE DAY delivered the opinion of the court.

In accordance with the opinion of this court handed

down February 21, 1910, *ante*, p. 1, the learned counsel for the States of Maryland and West Virginia have submitted drafts of a decree to be entered in the case in accordance with the conclusions announced by this court.

The differences in the proposed decrees are: first, concerning the boundary of Maryland along the south bank of the Potomac River from a point at or near Harper's Ferry, westwardly to the point where the north and south line from the Fairfax Stone crosses the North Branch of the Potomac River, should that boundary line be located at high-water mark as contended by counsel for the State of Maryland, or at low-water mark as contended by counsel for the State of West Virginia? In the opinion heretofore delivered in this case it was declared that the claim of the State of West Virginia for a location of her boundary line along the north bank of the Potomac River should be denied. This conclusion was reached upon the authority of the case of *Morris* v. *United States*, 174 U. S. 196. In the *Morris case* it was held in a contention between a title holder whose rights originated with the grant of 1632 to Lord Baltimore, and one whose rights originated under the grant of James II to Lord Culpeper, that the grant to Lord Baltimore included the Potomac River to high-water mark on the southern or Virginia shore. As West Virginia is but the successor of Virginia in title, the conclusion thus announced in the *Morris case* necessarily denied her claim to the Potomac River to the north bank thereof, and a decree was directed dismissing the cross bill of West Virginia in which such a claim was made.

In the former hearing, however, and in the decision rendered, the attention of the court was not directed to the question whether the boundary of Maryland should be at high-water mark or at low-water mark along the southern bank of the Potomac River.

As stated in the former opinion, after the State of West Virginia was created, an arbitration was had between the States of Virginia and Maryland, and the Virginia boundary was fixed at low-water mark on the south shore of the Potomac. See Code of Virginia, v. 1, title 3, ch. 3, § 13, p. 18. This location of the boundary between Maryland and Virginia was accepted by the State of Maryland and definitely fixed as the line between herself and the State of Virginia. The arbitration of 1877 was before eminent lawyers and an elaborate opinion was rendered by them. They reached the conclusion that following the description in the charter of Charles I to Lord Baltimore, the right or south bank of the Potomac River, at high-water mark, was the boundary between Maryland and Virginia. This conclusion is in accordance with the one reached by this court in the *Morris case*, in which case it was declared that the province of Maryland under the charter of Lord Baltimore embraced the Potomac River to high-water mark on the southern, or Virginia shore, and the court then declared that this title had not been divested by any valid proceedings prior to the Revolution, nor was it affected by the subsequent grant to Lord Culpeper, and therefore, as between the claimants under the old grant to Lord Baltimore and the one to Lord Culpeper, that the title of the claimants under the Baltimore grant embraced the Potomac River to high-water mark on the Virginia shore. But the arbitrators proceeding to establish the boundary between the States in the light of subsequent events, after referring to the effect of long occupation upon the rights of States and nations, and declaring that the length of time that raises a right by prescription in private parties likewise raises such a presumption in favor of States as well as private parties, took up the location of the boundary between the States along the Potomac River, and said:

"The evidence is sufficient to show that Virginia, from

the earliest period of her history, used the South bank of the Potomac as if the soil to low water mark had been her own. She did not give this up by her Constitution of 1776, when she surrendered other claims within the charter limits of Maryland; but on the contrary, she expressly reserved 'the property of the Virginia shores or strands bordering on either of said rivers, (Potomac or Pocomoke) and all improvements which have or will be made thereon.' By the compact of 1785, Maryland assented to this, and declared that 'the citizens of each State respectively shall have full property on the shores of the Potomac, and adjoining their lands, with all emoluments and advantages thereunto belonging, and the privilege of making and carrying out wharves and other improvements.'

*        *        *        *        *        *        *        *

"Taking all together, we consider it established that Virginia has a proprietary right on the south shore to low water mark, and, appurtenant thereto, has a privilege to erect any structures connected with the shore which may be necessary to the full enjoyment of her riparian ownership, and which shall not impede the free navigation or other common use of the river as a public highway.

"To that extent Virginia has shown her rights on the river so clearly as to make them indisputable."

The compact of 1785 (see Code of Virginia, v. 1, title 3, ch. 3, § 13, p. 16) is set up in this case, and its binding force is preserved in the draft of decrees submitted by counsel for both States. We agree with the arbitrators in the opinion above expressed, that the privileges therein reserved respectively to the citizens of the two States on the shores of the Potomac are inconsistent with the claim that the Maryland boundary on the south side of the Potomac River shall extend to high-water mark. There is no evidence that Maryland has claimed any right to make grants on that side of the river, and the privileges

reserved to the citizens of the respective States in the compact of 1785 and its subsequent ratifications indicate the intention of each State to maintain riparian rights and privileges to its citizens on their own side of the river.

This conclusion gives to Maryland a uniform southern boundary along Virginia and West Virginia at low-water mark on the south bank of the Potomac River to the intersection of the north and south line between Maryland and West Virginia, established by the decree in this case. This conclusion is also consistent with the previous exercise of political jurisdiction by the States respectively.

The decree will therefore provide for the south bank of the Potomac River at low-water mark on the West Virginia shore as the true southern boundary line of the State of Maryland.

The other contention in the case concerns the costs of the surveys made by the surveyors of the respective States. It is the contention of Maryland that they should be equally divided, while West Virginia contends that each State should bear its own expense in this respect. An examination of the record shows that early in the proceedings in this case, on the twenty-sixth day of May, 1894, an order was entered by consent of parties, which authorized a survey to be made by surveyors to be agreed upon in writing by counsel for the respective States, said surveyor or surveyors to return to this court a report and map or maps made by him or them under the order, together with copies of such report, map or maps. The order provided for notice to be given attorneys for both parties of the time and place of commencing such surveys. Subsequently surveyors were designated, surveys were made and elaborate reports were filed in this court. Under these circumstances we are of opinion that the order heretofore made concerning the division of the costs should include the costs of such surveys. As was said by this court in *Nebraska* v. *Iowa,* 143 U. S. 359, 370,

in making an order for a division of costs between the two States in a boundary dispute, the matter involved is governmental in character, in which each party has a real and yet not a litigious interest. The object to be obtained is the settlement of a boundary line between sovereign States in the interest, not only of property rights, but also in promotion of the peace and good order of the communities, and is one which the States have a common interest to bring to a satisfactory and final conclusion. Where such is the nature of the cause we think the expenses should be borne in common, so far as may be, and we therefore adopt so much of the decree proposed by the State of Maryland as makes provision for the costs of the surveys made under the order of this court.

We append the decree to be entered:

## DECREE

This cause came on to be heard at this term and was argued by counsel; and thereupon, on consideration thereof, it was adjudged and decreed as follows:

First. That the true boundary line between the States of Maryland and West Virginia is ascertained and established as follows:

Beginning at the common corner of the States of Maryland and Virginia on the southern bank of the Potomac River at low-water mark at or near the mouth of the Shenandoah River, (near Harper's Ferry,) and running thence with the southern bank of the said Potomac River, at low-water mark, and with the southern bank of the North Branch of the Potomac River at low-water mark, to the point where the north and south line from the Fairfax Stone crosses the said North Branch of the Potomac, and thence running northerly, as near as may be, with the Deakins or Old State line to the line of the State of Pennsylvania.

Second. That Julius K. Monroe, William McCulloch

Brown and Samuel S. Gannett be, and they are hereby, appointed commissioners to run, locate and establish and permanently mark with suitable monuments the said Deakins or Old State line as the boundary line between the States of Maryland and West Virginia from said point on the southern bank of the North Branch of the Potomac River to the said Pennsylvania line, in accordance with the opinion of this court heretofore filed in this case and with this decree, the said line to be run and located as far as practicable as it has been generally recognized and adopted by the people residing about or near the same as the boundary line between the said States, and not as conforming, except to a limited extent, to the western boundary of the Maryland Military Lots as said lots are now located and held. Said commissioners shall mark said line as run, located and established by them with suitable stone monuments, at reasonable and proper intervals, according to the topography of the country.

It is further ordered that before entering upon the discharge of their duties each of said commissioners shall be duly sworn to perform faithfully, impartially and without prejudice or bias the duties herein imposed; said oath to be taken before the clerk of this court, or before either of the clerks of the Circuit Courts of the United States for the District of Maryland or for the Northern District of West Virginia, or before an officer authorized by law to administer an oath in the State of Maryland or of West Virginia, and returned with their report; that said commissioners may arrange for their organization, their meetings and the particular manner of the performance of their duties, and are authorized to adopt all ordinary and legitimate methods in the ascertainment of the true location of said boundary line, including the taking of evidence under oath and calling for papers and documents, but in the event evidence is taken the parties shall be notified and permitted to be present and cross-examine

the witnesses; and all evidence taken by the commissioners and all exceptions thereto and action thereon shall be preserved and certified and returned with their report.

Said commissioners are also at liberty to refer to and consult the printed record in the cause so far as they may think proper to enable them to discharge their duties under this decree.

It is further ordered that the clerk of this court shall at once forward to the governor of each of said States of Maryland and West Virginia, and to each of the commissioners appointed by this decree, a copy of this decree duly authenticated. And said commissioners are authorized, if they deem it necessary, to request the co-operation and assistance of the State authorities in the performance of the duties imposed on them by this decree.

It is further ordered that said commissioners do proceed, with all convenient dispatch, to discharge their duties in running, locating, establishing and marking said line as herein directed, and make their report thereof and of their proceedings in the premises to this court on or before the first day of January, 1911, together with a complete bill of costs and charges annexed.

It is further ordered that should vacancies occur in said board of commissioners by reason of death, the refusal to act or inability to perform the duties required by this decree, the Chief Justice of this court is hereby authorized and empowered to appoint other commissioners to supply such vacancies, and said Chief Justice is authorized to act on such information in the premises as may be satisfactory to himself.

It is further ordered that all the costs of the proceedings by said commissioners under this decree, including a remuneration of not exceeding fifteen dollars ($15.00) per day and his reasonable expenses for each commissioner whilst actually engaged in the performance of his duties

hereunder, and the other costs incident to the running, locating, establishing and marking said line, shall be paid by the States of Maryland and West Virginia equally.

Third. That the cross bill of the State of West Virginia, in so far as it asks for a decree fixing the north bank of the Potomac River as the boundary line between said States, be, and the same is, hereby dismissed.

Fourth. That this decree shall not be construed as abrogating or setting aside the compact made between commissioners of the State of Maryland and the State of Virginia at Mount Vernon on the 28th day of March, 1785, and which was confirmed by the general assembly of Maryland and afterwards by act of the general assembly of Virginia passed on the 3rd day of January, 1786, but the said compact, except so far as it may have been superseded by the provisions of the Constitution of the United States, or may be inconsistent with this decree, shall remain obligatory upon and between the States of Maryland and West Virginia, so far as it is applicable to that part of the Potomac River which extends along the border of said States, as ascertained and established by this decree.

Fifth. That all the costs in this case and the proceedings therein as the same shall be taxed by the clerk of this court, and including also the costs of the surveys made by the two States under the order or orders of this court, said costs for said surveys to be ascertained and taxed by the clerk of this court upon vouchers sworn to and exhibited to him, shall be equally divided between the said two States.