## Richmond.

### HENRY LEE AND ANNIE LEE v. THE COUNTY SCHOOL BOARD OF KING WILLIAM COUNTY.

#### April 22, 1926.

1. APPEAL AND ERROR—*Instructions—Assignment of Error—Refusal to Give Certain Instructions—Record Failing to Show Assignment.*—An assignment of error because of the refusal of the court to give certain instructions asked for at the instance of the appellants, where the record failed to show any error assigned because of a failure on the part of the court to instruct the jury, cannot be considered on appeal.

2. ADVERSE POSSESSION—*School Board—Requisites—Case at Bar.*—In the instant case, although how plaintiff, a county school board, first took possession of the land in dispute was not shown, the evidence was convincing that it had been at least thirty years since the property was first occupied by the school authorities, and that the board had held and used the same in such a manner as to meet all the requirements necessary to perfect a title by adverse possession. Certainly the jury would have been justified in so finding.

   *Held:* That this established title in the school board by adverse possession, if such title could be so acquired by a corporate division of the public school system.

3. SCHOOLS—*Real Estate—County School Board a Body Corporate.*—The county school board is a body corporate with power of condemnation, and with the capacity to acquire and hold real and personal estate, and to sue and be sued. Thus, the county school board has been placed in the same position of other corporations, as respects its relation to third persons.

4. ADVERSE POSSESSION—*Limitation of Actions—State and United States.*—It is true that statute of limitations does not run against the State or the United States, but these exemptions are the attributes of sovereignty and the converse of the doctrine does not follow.

5. ADVERSE POSSESSION—*Limitation of Actions—Artificial Persons.*—As a general rule the statute limiting the time for the commencement of real actions operates in favor of every class and description of persons, natural or artificial, and they may acquire title to land by adverse possession.

6. ADVERSE POSSESSION—*Limitation of Actions—County School Board.*—A county school board may acquire title to property by adverse pos-

session, and where property has been openly and exclusively held and used by its possessors for more than a quarter of a century, every presumption should be indulged in favor of the tenure under claim of right and of the validity of the title.

7. DEDICATION—*Abandonment—Negative Non User.*—Generally after acceptance, or where acceptance is unnecessary to bind the dedicator, a mere negative nonuser accompanied by no acts showing intention of never using, and not complicated by actual user of some private party, does not constitute an abandonment and has no effect upon the rights of the public, no matter how long the nonuser is continued.

Error to a judgment of the Circuit Court of King William county, in an action of ejectment. Judgment for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*W. T. Mooklar,* for the plaintiffs in error.

*H. I. Lewis,* for the defendant in error.

McLEMORE, J., delivered the opinion of the court.

Action of ejectment in which the plaintiffs in error in this court were defendants in the court below. There was a verdict and judgment for the plaintiff, and defendants in the trial court bring error.

The parties will be hereafter referred to as they appeared in the trial court.

The controversy in this case arises out of the ownership of two acres of land situated in King William county and known as the "school lot," being originally a part of the Patterson estate. The tract out of which the school lot was carved was owned by Robert H. Johnson and contained about eighty-six acres. The record is silent as to how long Johnson owned the property. He must have acquired it before the clerk's office was destroyed in 1885.

The school board had used the property for school purposes for at least thirty years next before the institution of this suit, and during a part or all of the time the adjoining farm was owned by Robert H. Johnson, he was one of the school trustees controlling said property; that the eighty-six acre tract after Johnson's death was sold under an order of the chancery court, W. T. Mooklar, special commissioner, on July 25, 1914, and at the sale so had it was publicly announced that the school house lot was not included in the sale, though the deed is silent on the subject. Thomas W. Atkin was the purchaser at this sale, and he in turn sold the property to J. W. Atkinson, who sold same to Annie Lee, wife of Henry Lee, by deed dated March 8, 1920. All of these conveyances referred to the property as that sold and conveyed by Special Commissioner Mooklar.

There was a small single room school building on the property during the period covered by all these conveyances, and until about five years before the institution of this suit in September, 1923, the property had been continuously used for school purposes and under the control of school trustees.

About five or six years prior to 1923, the school board discontinued the school in this building, the same having been moved to the "Chappel," but contended that they expected to use it for a colored school, it having been previously used as a white school.

When the defendants came into possession of the Johnson tract in 1920, they took possession of the school property and actually occupied the same, whereupon the school board brought its action of ejectment.

A fair idea of the evidence introduced on the trial may be gathered from the narrative of H. L. Pitts as it appears in the record.

H. L. Pitts testified as follows:

"That he is a patron of the 'Johnson's School' and has lived in the neighborhood for a number of years. That the school property was acquired about thirty-seven years ago by the district school board of Mangohic district; that the school board had owned the property in fee simple and held possession of it during their entire time, claiming title thereto, and had built a school building thereon, and used it for school purposes till five or six years ago, and that it had never been out of possession of the school board, nor did anyone claim title thereto until possession was taken by Henry Lee and Annie Lee; that it was used as school property, school being taught in same until the school was moved to the 'Chappel,' 'Fox Chappel;' that Miss Woody taught in the chappel about a session and one-half, then they built a new school house on another tract of land acquired from Miss Belle Cocke, near the old school house, four or five years ago, and during the time that the school was being taught in the Chappel and the new school house on the new site, there was no school being taught in the old school house, and that the old school house was not at that time used for school purposes. That only white pupils have been taught in the old and new school houses. He further testified that Robert H. Johnson was a trustee of the district school board and was interested in the school, and that he never claimed the school house or property while he owned the tract of land adjacent or while the school was being taught in the old school house; that while he was living they used the old school house for school purposes and taught white children in same."

The instructions given to the jury are as follows:

"1. The court instructs the jury that the plaintiff must show a legal title in itself and a present right of

possession at the time of the commencement of this suit before the defendants are called upon to show anything, and the party in possession is presumed to be the owner until the contrary is proved. *Interstate Coal, etc., Co.,* v. *Clintwood, etc., Co.,* 105 Va. 580, 54 S. E. 593.

"2. The court tells the jury that the plaintiff, in order to recover upon the theory of a paper title without regard to possession thereunder, must show title complete in itself before the institution of this suit. *Virginia and Tennessee, etc., Co.* v. *Fields,* 94 Va. 110, 26 S. E. 426.

"3. The court instructs the jury that the right of the plaintiff to recover in this action rests on the strength of their own title, and they cannot recover by showing defects, if any, in the title to the defendants.

"7. The court instructs the jury that the school board could acquire the use to a tract of land for school purposes by deed or otherwise, and if they believe from the evidence that the school board only acquired the use of said land for school purposes, and not its fee simple title, and that from the evidence they also believe that the said school board has discontinued to use said property for school purposes or has abandoned said land, they must find for the defendants."

The following instructions offered by defendants were refused:

"The court instructs the jury that if they believe from the evidence that the plaintiff, at any time and in any way, acquired the use and occupancy of the said land described in the plaintiff's declaration for public school purposes to teach white children of school age in the school house erected on said land, and that they further believe from the evidence that the said school board has discontinued the use of said land for public school purposes, that is to teach white children in same, then they must find for the defendants.

"The court instructs the jury that if they believe from the evidence that the school board or county school officials only acquired the land in question by dedication from its owner, and that they have abandoned said site or school property at any time since same was dedicated for school purposes, they are instructed that the site of said schoolhouse and the schoolhouse thereon reverts to the party who made the dedication, or his successors in title, and they must find for the defendants.

"The court instructs the jury that a tract of land dedicated at common law for school purposes does not deprive the owner, the dedicator of the title to said land, but only stops him, while the dedication continues, from asserting any right to said property, the fee simple title to said land donated still remains in the donator, and if they further believe from the evidence, that the school board has at any time discontinued the use of the said property or to use it for school purposes, if it was acquired for school purposes, they must find for the defendants."

In the brief of the petitioner the case is argued on the theory that there are two assignments of error:

"First: To the action of the court in refusing to set aside the verdict as contrary to the law and the evidence and as against the evidence.

[1] "Second: Because of the refusal of the court to give certain instructions asked for at the instance of the defendants, but the record fails to show any error assigned because of a failure on the part of the court to properly instruct the jury, and, therefore, that ground of exception cannot be considered by this court. *Denis* v. *Commonwealth,* 144 Va. 559, 131 S. E. 131; *Thurston* v. *Woodward,* 139 Va. 315, 123 S. E. 366; Burks Pl. & Prac. (2nd ed.) section 396."

This brings us to the sole question in the case, namely: Is the verdict and judgment in favor of the plaintiff contrary to the law and the evidence?

[2] The instructions given to the jury seem to us to have been as favorable to the defendants as they had any reason to expect. The undisputed evidence was ample to establish in the school board title by adverse possession, if such a title can be so acquired by a corporate division of the public school system of the State.

We are unable to say when or how the plaintiff first took possession of the land in dispute, but the evidence is convincing that it has been at least thirty years since the property was first occupied by the school authorities, and that it has held and used the same in such a manner as to meet all the requirements necessary to perfect a title by adverse possession. Certainly the jury would have been justified in so finding.

Plaintiffs in error insist that while title by adverse possession for the statutory period can be successfully invoked by an individual, it is not available to the State or to any of its public agencies and, therefore, cannot be used by the plaintiff to support its title in this case.

[3, 4] The county school board is a body corporate with power of condemnation, and with the capacity to acquire and hold real and personal estate, and to sue and be sued. Code of Virginia, section 639.

It will thus be seen that by statute the county school board has been placed in the same position of other corporations, as respects its relation to third persons. It is true that statute of limitations does not run against the State or the United States, but these exemptions are the attributes of sovereignty and the converse of the doctrine does not follow.

The precise question seems never to have come before the appellate court in this State, although it was con-

ceded in the case of *County of Allegheny* v. *Parrish*, 93 Va. 621, 25 S. E. 882, that appellee might have set up the statute of limitations against the county if the facts justified the plea, and long uninterrupted possession is recognized as a means of perfecting title in *Norfolk City* v. *Cooke*, 27 Gratt. (68 Va.) 430, and numerous States, as well as the Supreme Court of the United States (*Maryland* v. *West Virginia*, 217 U. S. 577, 30 S. Ct. 630, 54 L. Ed. 888), affirm the doctrine that a municipal corporation or subdivision of the State can plead and perfect title against the world by adverse possession. *Smith* v. *Cornelius*, 41 W. Va. 59, 23 S. E. 599, 30 L. R. A. 747; *City of Raleigh* v. *Durfey*, 163 N. C. 154, 79 S. E. 436; Warvell on Ejectment, section 465; *Harris* v. *Commonwealth*, 20 Gratt. (61 Va.) 833.

[5] "As a general rule the statute limiting the time for the commencement of real actions operates in favor of every class and description of persons, natural or artificial, and they may acquire title to land by adverse possession." 2 Corpus Juris, 228; *Rhode Island* v. *Massachusetts*, 4 Howard (U. S.) 591, 11 L. Ed. 1116; *Eldridge* v. *Binghampton*, 120 N. Y. 309, 24 N. E. 462; *Parker* v. *Southwick* (Pa.), 6 Watts, 377.

"Statute of limitations constitutes a source of title to the occupant to which he may appeal to sustain an action of ejectment brought by him as plaintiff." 2 Minor on Real Property, page 1021.

[6] We are of the opinion, therefore, that the great weight of the authorities sustain the view that municipal bodies can acquire title by adverse possession, and that these authorities are in accord with the most logical reasoning on the subject. The best interest of society requires that titles should be as free from disturbing uncertainties as possible, and where property has been openly and exclusively held and used by its

possessors for more than a quarter of a century, every presumption should be indulged in favor of the tenure under claim of right and of the validity of the title.

[7] As to the abandonment of the school board of the two acre tract, suffice it to say there is no satisfactory evidence that the property was acquired by condemnation or by dedication, but be that as it may, this question was submitted to the jury in instruction No. 7 wherein they were told to find for the defendants, if they believed from the evidence that the plaintiff "had discontinued to use said property for school purposes or has abandoned said land."

"It is very generally held that after acceptance, or where acceptance is unnecessary to bind the dedicator, a mere negative nonuser accompanied by no acts showing intention of never using, and not complicated by actual user of some private party, does not constitute an abandonment and has no effect upon the rights of the public, no matter how long the nonuser is continued." 18 Corpus Juris, 125, and cases cited.

We think the jury were justified in the verdict rendered, and the judgment of the court based thereon is affirmed.

*Affirmed.*