SMOOT SAND &-GRAVEL CORPORATION *v.*
WASHINGTON AIRPORT, INC.

No. 678. Argued April 17, 1931.—Decided May 4, 1931.

Mr. *Thomas D. Thacher,* with whom *Messrs. Seth W. Richardson, G. A. Iverson, Paul W. Kear,* and *Erwin N. Griswold* were on the brief, for petitioner.

Mr. *Louis Titus* for respondent.

*Messrs. John R. Saunders,* Attorney General of Virginia, *Edwin H. Gibson* and *Collins Denny, Jr.,* Assistant Attorneys General, and *Hugh Reid,* by special leave of Court, filed a brief on behalf of the Commonwealth of Virginia as *amicus curiae.*

Mr. Justice Holmes delivered the opinion of the Court.

This suit was brought by the respondent for an injunction against alleged trespasses on land between high and low water mark on the Virginia side of ,the Potomac River opposite the District of Columbia. It was brought originally in the Circuit Court of Arlington County, Virginia, and on the petition of the defendant the Smoot Sand and Gravel Company was removed to the District

Court of the United States for the Eastern District of Virginia. That Court dismissed the case for want of jurisdiction, but the decree was reversed by the Circuit Court of Appeals. 44 F. (2d) 342. A writ of certiorari was granted by this Court.

The Circuit Court of Appeals states that the sole question presented is whether the boundary line between Virginia and the District of Columbia is at high or at low water mark on the Virginia side of the Potomac, and that is the only question argued here. In view of the previous decisions and intimations of this Court it does not need extended discussion now.

It must be assumed, notwithstanding some suggestion of ancient controversies, that the title of Maryland was that conveyed to Lord Baltimore by the charter of Charles I. and ran to and along the farther bank of the Potomac River. *Marine Railway & Coal Co.* v. *United States,* 257 U. S. 47, 63. This means that the boundary was the usual high water mark, *Oklahoma* v. *Texas,* 260 U. S. 606, 626, *et seq.*; so that the only question is whether anything has happened since to change the original line. At the present stage of this old discussion the most important inquiry is raised by the supposed contradiction between the language of this Court in settling the decree in *Maryland* v. *West Virginia,* 217 U. S. 577, and that in the later case of *Marine Railway & Coal Co.* v. *United States,* 257 U. S. 47. With regard to that it is to be noticed that Mr. Justice Day, who wrote the earlier decision, took part also in the later and seems to have agreed with it. There was no adequate reason why he should not have agreed. *Maryland* v. *West Virginia* was a suit to settle a portion of the boundary line between those States. The decision could not affect the District of Columbia. It relied primarily upon an arbitration upon the issue in 1877, in which it was admitted that the original boundary was

high water mark on the Virginia side, but held that the low water mark was established by prescription. The arbitration also relied upon a Compact of 1785, 1 Dorsey, Maryland Laws, 1692–1839, p. 187; 12 Hening, Virginia Statutes, p. 50, giving it a construction to which we cannot agree. Prescription was a sufficient reason for the decision, and could not be invoked against the District. The Compact is seen in a different light in *Marine Railway & Coal Co.* v. *United States.* As stated in 257 U. S. 64, Article 7 gave the citizens of each State full property in the shores of the River adjoining their lands and the privilege of carrying out wharves, &c., but left the question of boundary open to long continued disputes. The rights of private citizens established by Article 7 were further cared for by Article 12 giving citizens of each State having lands in the other liberty to transport to their own State the produce of such lands or to remove their effects, free of any charge or tax. But private ownership does not affect State boundaries. Some argument is based on the word ' shores.' But that is merely a topographical indication and imports nothing as to the sovereignty over them. We adhere to the opinion that the Compact has no bearing on the present case.

*Decree reversed.*

MR. JUSTICE MCREYNOLDS, dissenting.

Twenty years ago (1910), in *Maryland* v. *West Virginia,* 217 U. S. 577, it was definitely ruled by this Court (and rightly so) that under the compact of 1785 between Virginia and Maryland the uniform southern boundary of the latter State was low water mark on the right bank of the Potomac. Proper solution of the present controversy depends upon the precise question there decided. Fair consistency and proper regard for titles along the

ten-mile river front in the District of Columbia, I think, demand that we follow what was thus solemnly declared.

*Marine Ry. Co.* v. *United States* (1921), 257 U. S. 47, was a proceeding begun by them to recover land on the Potomac River front at Alexandria originally below low water mark. Notwithstanding the essential point there was distinct from the one upon which *Maryland* v. *West Virginia* turned, the opinion carefully affirmed that " the former decisions of the Court must be followed so far as they go "—a truism, I submit, still worthy of acceptation. And the further observation that " the compact between Virginia and Maryland in 1785 also seems to us to have no bearing upon the case " is plainly correct, whether relevant or not.

As *Marine Ry. Co.* v. *United States* related only to land below low water mark the compact of 1785 of course was inapplicable to the controversy. That compact did not undertake to settle titles to lands so located. No more did it apply to lands in Baltimore City.

In such circumstances the suggestion that the writer of the opinion in *Maryland* v. *West Virginia* by assenting to *Marine Ry. Co.* v. *United States* gave his approval to a doctrine directly opposed to the one he had definitely expressed for the Court seems to me without substance. The Court, through him, had ruled that the Maryland boundary extended to low water mark on the south side. Why should he object to an opinion which after expressly accepting former decisions held that land lying in the river north of that line had been part of Maryland?

The challenged decree should be affirmed.