**UNITED STATES of America,
Plaintiff,**

v.

**HERBERT BRYANT, INC., et al.,
Defendants.**

Civ. Nos. 2211–73, 1903–73.

United States District Court,
District of Columbia.

Dec. 9, 1974.

David W. Miller, Dept. of Justice, Washington, D.C., for plaintiff.

Charles F. Midkiff, (Liaison Counsel) Richmond, Va., for defendants.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

The United States has filed this suit [1] to quiet title to all fast and submerged lands "in Virginia or the District of Columbia" [2] that lie along the waterfront of the City of Alexandria, roughly from Gibbon Street on the south to Slater's Lane on the north, and from the Potomac River on the east to "the January 24, 1791, high water mark of the Potomac River" [3] on the west.

There are some 35 defendants who are the record owners, or interest holders, of such lands.[4]

This Court's jurisdiction is premised upon 28 U.S.C. § 1345 (1970); the Act

1. The main action, United States v. Herbert Bryant, C.A. No. 2211–73, was consolidated with a related matter, United States v. Robinson Terminal Warehouse, C.A. No. 1903–73. In *Robinson Terminal*, this Court granted a preliminary injunction concerning submerged lands in the Potomac River. Memorandum and Order, Nov. 13, 1973. The two cases are conceptually distinct. Therefore, by a separate Order entered this date, the Court will sever the two cases.

2. Complaint, para. II.

3. *Id.*

4. Complaint, para. III.

of April 27, 1912, ch. 96, 37 Stat. 93 (the 1912 Act); and the Act of October 31, 1945, ch. 443, 59 Stat. 552 (the 1945 Act) [set out as a note under D.C.Code Ann. § 1–101 (1973)].

At the heart of the matter is the long-standing and troublesome question of where lies the boundary between the District of Columbia and the Commonwealth of Virginia (Virginia), and all of the vexatious problems incident thereto. The greater part of the land in dispute in this action concededly is located within the territorial limits of Virginia; the remainder is said to be situated within the territorial limits of the District of Columbia.

Before the Court at this time are motions (1) to dismiss for lack of jurisdiction; (2) to quash service of process; (3) to transfer the cause to the District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1441(a); and (4) to refer the cause to a master.

 For reasons set out hereinafter, the Court holds that it lacks jurisdiction to hear and determine a quiet title action to any land situated within the territorial limits of Virginia.

I

A brief history of the dispute over the boundary between Virginia and the District of Columbia is set out in *Robinson Terminal,*[5] and need not be repeated at this juncture. What is to be gleaned from that history, and what is important for our purposes, is that, the present boundary is the mean high-water mark on the Virginia shore of the Potomac River, except within the environs of the City of Alexandria, where the boundary is the established pierhead line.[6]

Most of the lands claimed by the Government lie shoreward, or westward, of the pierhead line between Gibbon Street on the south to Second Street on the north where the pierhead line terminates. They make up the so-called "Alexandria Waterfront." Clearly these parcels lie within the territorial limits of Virginia.

It would also appear that the District of Columbia Government lays no claim to the area between Second and Third

---

5. *Robinson Terminal, supra* note 1.

6. § 101 of the 1945 Act. It provides:

The boundary line between the District of Columbia and the Commonwealth of Virginia is hereby established as follows:

Said boundary line shall begin at a point where the northwest boundary of the District of Columbia intercepts the high-water mark on the Virginia shore of the Potomac River and following the present mean high-water mark; thence in a southeasterly direction along the Virginia shore of Little River to Boundary Channel, along the Virginia side of Boundary Channel to the main body of the Potomac River, along the Virginia side of the Potomac River across the mouths of all tributaries affected by the tides of the river to Second Street, Alexandria, Virginia, from Second Street to the present established pierhead line, and following said pierhead line to its connection with the District of Columbia-Maryland boundary line; that whenever said mean high-water mark on the Virginia shore is altered by artificial fills and excavations made by the United States, or by alluvion or erosion, then the boundary shall follow the new mean high-water mark on the Virginia shore as altered, or whenever the location of the pierhead line along the Alexandria water front is altered, then the boundary shall follow the new location of the pierhead line.

Prior to 1945, the Supreme Court had consistently held that the boundary was the mean high-water mark of the Potomac all along the Virginia shore. *See* United States v. Dern, 289 U.S. 352, 354, 51 S.Ct. 474, 75 L.Ed. 1109 (1933); Smoot Sand & Gravel Corp. v. Washington Airport, 283 U.S. 348, 350, 51 S.Ct. 474, 75 L.Ed. 1109 (1931). *See also* Marine Ry. v. United States, 257 U.S. 47, 63, 42 S.Ct. 32, 66 L.Ed. 124 (1921); Morris v. United States, 174 U.S. 196, 19 S. Ct. 649, 43 L.Ed. 946 (1899).

For relevant decisions of the Court of Appeals of the District of Columbia, *see, e. g.,* Herald v. United States, 52 App.D.C. 147, 284 F. 927 (1922); Evans v. United States, 31 App.D.C. 544 (1908).

Streets and that it, accordingly, lies within the territorial limits of Virginia.[7]

As to the remainder, *i. e.*, the parcels lying between Third Street and Slater's Lane, also claimed by the Federal Government, there may be a question as to whether those parcels lie within the territorial limits of the District of Columbia or Virginia. On the present state of the record, the Court is unable to make a firm finding.[8]

█ The fact that most, if not all, of the property as to which title is claimed is located in Virginia is crucial to an understanding of defendants' motions to dismiss. The Government asserts that the 1912 and 1945 Acts vested this Court with exclusive jurisdiction to resolve the question of title as to all lands claimed regardless of where situated, while the defendants argue the 1912 and 1945 Acts did not confer such exclusive jurisdiction and that, lacking such a statutory grant of jurisdiction, this Court cannot,

under general legal principles, exercise *in rem* jurisdiction over land situated beyond its territorial boundary.[9] The Court agrees with the defendants.

We turn to each of the statutes involved.

## II

### A. *The 1912 Act*

The operative provision of the 1912 Act, § 1, is set out in full in the margin.[10] By its terms, the Act established a judicial framework for the resolution of title disputes between the United States and private parties over the ownership of any lands *"in the District of Columbia* in, under, and adjacent to the Potomac River."[11] Although the legislative history of the 1912 Act indicates that the Act was designed primarily to meet the problems of the Anacostia River reclamation,[12] the Act explicitly establishes this Court as the forum for title

---

7. This conclusion is supported by a letter from the Commissioner of the District of Columbia to the Chairman of the Senate Committee on the District of Columbia, dated August 24, 1972, in which the Commissioner stated that land below *Third Street* (which is north of Second Street) in Alexandria was "not within the boundaries of the District of Columbia." Hearings on S. 3861 Before the Senate Comm. on the District of Columbia 92d Cong., 2d Sess. 21 (1972) (letter from Graham W. Watt, Assistant to the Commissioner, For the Commissioner, to the Chairman, Senate Committee on the District of Columbia, Aug. 24, 1972). S. 3861, although never enacted into law, was a bill that would transfer to the City of Alexandria the interests of the United States, presumably the same interests claimed in the case at bar, in certain specified property along the Alexandria waterfront, *i. e.*, the same property involved herein except only from Third Street south to Gibbon Street.

8. At oral argument, Government counsel asserted that some of the land in controversy is in the District of Columbia. (Tr. 50.) It will be recalled that the complaint alleges that all the land in question lies in Virginia *or* the District of Columbia. *See* p. 1, *supra.*

9. As noted *supra*, the defendants have also moved to transfer the cause to the District Court for the Eastern District of Virginia, pursuant to 28 U.S.C. § 1441(a), to quash

service of process, and to refer the case to a master. In view of the disposition of the case, the Court lacks jurisdiction to decide those motions as they relate to properties lying within the territorial limits of Virginia.

10. Section 1 of the 1912 Act provides:

That for the purpose of establishing and making clear the title of the United States it shall be the duty of the Attorney General of the United States to institute as soon as may be, or whenever in his judgment it is deemed proper, a suit or suits in the (District Court for the District of Columbia) against all persons and corporations, or others, who may have, or pretend to have, any right, title, claim, or interest adverse to the complete title of the United States in and to any part or parcel of the land or water in the District of Columbia in, under, and adjacent to the Potomac River, the Anacostia River or Eastern Branch, and Rock Creek, including the shores and submerged or partly submerged land, as well as the beds of said waterways, and also the upland immediately adjacent thereto, including made lands, flats, and marsh lands.

11. *Id.* (emphasis added).

12. H.R.Rep.No.513, 62 Cong., 2d Sess. 2 (1912). Section 5 of the 1912 Act, providing for direct appeal to the Supreme Court, has been repealed. *See* United States v. Belt, 319 U.S. 521, 63 S.Ct. 1278, 87 L.Ed. 1559 (1943).

disputes concerning land situated in the District of Columbia—and only in the District of Columbia. The Government recognizes the applicability of the 1912 Act to "land in the District of Columbia" only, but argues that the 1945 Act extended this Court's jurisdiction to the lands now in controversy.

## B. *The 1945 Act*

■ We have previously alluded to § 101 of the 1945 Act.[13] It is § 103 of the Act, however, to which we must look for a resolution of this dispute.

§§ 103 provides:

Nothing in this Act shall be construed as relinquishing any right, title, or interest of the United States to the lands lying between the mean high-water mark as it existed January 24, 1791, and the boundary line described in section 101; or to limit the right of the United States to establish its title to any of said lands as provided by (the 1912 Act); *or the jurisdiction of the courts of the United States for the District of Columbia to hear and determine suits to establish the title of the United States in all lands in the bed, marshes, and lowlands of the Potomac River, and other lands as described by said Act below the mean high-water mark of January 24, 1791;* . . .. (Emphasis added.)

It is the Government's position that § 103 of the 1945 Act explicitly reserves exclusive jurisdiction in this Court over the disputed lands notwithstanding that they lie within the territorial limits of Virginia because formerly the "very lands here in controversy were within the territorial limits of this Court for quiet title actions brought by the United States,"[14] by virtue of the 1912 Act and pertinent decisions of the Supreme Court. The defendants, on the other hand, contend that the 1945 Act does no more than preserve this Court's jurisdiction over lands described in the Act of 1912, *i. e.*, land in the District of Columbia. They bolster this assertion by noting that Section 202 of the 1945 Act extends the jurisdiction of the District Court for the Eastern District of Virginia over the area within which the disputed lands lie, and that it would be unreasonable to deprive that Court of jurisdiction over such lands.

■ The Court's view of § 103 is that it is a legislative reaffirmation of the 1912 Act, that the term "said Act" clearly refers to the 1912 Act, and that the "lands" referred to in § 103 are those lands "in the District of Columbia" as specified by the 1912 Act. This conclusion is consistent with the terms of § 202, which amended the then-Judicial Code so as to embrace within the boundaries of the District Court for the East-

---

13. In the arguments and briefs, § 102 was also alluded to from time to time as having some bearing upon jurisdiction.

§ 102 states:

All that part of the territory situated on the Virginia side of the Potomac River lying between the boundary line as described in Section 101 and the mean high-water mark as it existed January 24, 1791, is hereby ceded to and declared to be henceforth within the territorial boundaries, jurisdiction, and sovereignty of the State of Virginia: *Provided, however,* That concurrent jurisdiction over the said area is hereby reserved to the United States.

It is clear however that the phrase "concurrent jurisdiction over the said area is hereby reserved to the United States" was inserted only to ensure the enforcement of the criminal law as to Federal facilities located phys-

ically in Virginia, namely, the George Washington Memorial Highway, the National Airport and the Pentagon, and that it is not relevant or material to the present controversy. *See* H.R.Rep.No.595, 79th Cong., 1st Sess. 3–4 (1945) (hereinafter cited as 1945 House Report) (letter from the Attorney General to the Chairman of the House Committee on the District of Columbia, Oct. 8, 1943). *See also* S.Rep.No.598, 79th Cong., 1st Sess. 3–4 (1945).

14. Plaintiff's Memorandum in Opposition to Motions to Dismiss, Transfer, and Quash 4.

The Government's reference to S.Rep.No. 907, 62d Cong., 2d Sess. 54 (1912) begs the question, for that report concerns a commission to investigate the title of the United States to lands *in the District of Columbia.*

ern District of Virginia the land ceded to Virginia by §§ 101 and 102 of the 1945 Act.[15]

■ The Government would seek to rebut what to this Court are the plain terms of the 1945 Act by saying that if Congress intended that an action such as this one was to be litigated in Virginia, Congress would not have needed or used the language it employed in § 103. But that position violates the well-known principle of statutory construction that all words in a statute are to be assigned a meaning and not to be considered mere surplusage. *See* 2 G. Sutherland, Statutory Construction § 4705 (3d ed. 1943).

■ Further, the position of the Government would represent a drastic departure from that fundamental principle of law that a Court has *in rem* jurisdiction only over lands located within its territorial boundaries. *See, e. g.,* Durfee v. Duke, 375 U.S. 106, 115, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); Fall v. Eastin, 215 U.S. 1, 11–12, 30 S.Ct. 3, 54 L.Ed. 65 (1909); Huntington v. Attrill, 146 U.S. 657, 669, 13 S.Ct. 224, 36 L.Ed. 1123 (1892); Sebold v. Sebold, 143 U.S.App.D.C. 406, 411, 444 F.2d 864, 869 (1971). "Following the example set in the First Judiciary Act and consistently adhered to since, (Federal District Courts) do not . . . extend across state lines." C. Wright, Federal Courts § 2, at 6 (2d ed. 1970).

■ In creating this District Court, then, Congress has recognized that principle by conferring on it jurisdiction only over land lying within the territorial boundaries of this district.[16] It is reasonable to assume that if, as the Government urges, the Congress had intended such a drastic departure from that fundamental principle of law, in order to give the Federal Court in the District of Columbia *in rem* jurisdiction over land in Virginia, it would have explicitly so provided.

■ This is not to say that Congress could not have legislated that this Court has exclusive jurisdiction in the cases at bar,[17] but in the absence of such explicit language, this Court should hesitate to arrogate jurisdiction unto itself.[18]

15. *See also* 1945 House Report 2:

> In order that there may be no question that the jurisdiction of the Federal courts in Virginia extends over this newly added territory, the act of July 1, 1910, specifying the territories embraced in these counties, has been rewritten so as to strike out the words "first day of July 1910" and insert in lieu thereof "effective date of this act."

*Cf.* Hearings on H.R. 9670 Before the House Judiciary Committee, 74th Cong., 2d Sess., ser. 13, at 58 (1936), where the Special Assistant to the Attorney General, Henry H. Glassie, speaks of private parties settling their claims against the Federal Government for land on the Virginia shore of the Potomac in "the courts of competent jurisdiction. "This statement, in 1936, was made at the time when only the 1912 Act was on the statute books. Therefore, it is reasonable to assume that if, in 1936, there were "courts of competent jurisdiction," as opposed to only one court, *i. e.,* this Court, as urged by the Government, then after the 1945 Act was passed, the same situation would obtain since the ceded property is now in Virginia.

16. The territorial boundary of this Court is, obviously, coterminous with the District of Columbia. Toneo Shirakura v. Royall, 89 F. Supp. 713, 715 (D.D.C.1949).

17. In the United States v. Union Pacific R.R., 98 U.S. 569, 603, 25 L.Ed. 143 (1878), the Court said:

> . . . that, with the exception of the Supreme Court the authority of Congress, in creating courts and conferring on them all or much or little of the judicial power of the United States, is unlimited by the Constitution.

Moreover, Congress has the powers of both a national and local legislative body in the District of Columbia. U.S.Const. art. I, § 8, cl. 17. *See* District of Columbia v. John R. Thompson Co., 346 U.S. 100, 108, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953); O'Donoghue v. United States, 289 U.S. 516, 545, 53 S.Ct. 740, 77 L.Ed. 1356 (1933).

*Compare* the jurisdiction of the District Court for the District of Columbia under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1970), as amended, which of course, is not an *in rem* proceeding.

18. Although pragmatic considerations are not strictly relevant to the narrow question of jurisdiction, or the lack thereof, it is foreseeable that if this Court should retain jurisdiction it would become involved in a myriad of ancillary claims and cross-claims concerning conveyances, taxes, insurance, leaseholds, rents, etc., all involving Virginia laws, customs and practices, and Virginia citizens. To

## III

In light of the above, the Court holds that it is without subject matter jurisdiction to adjudicate this controversy as to any land that lies within the territorial limits of the Commonwealth of Virginia. It does, of course, have jurisdiction in any suit involving any land within the District of Columbia.

To the end that the Court may enter appropriate and explicit orders as to each parcel of land involved in the case at bar, the plaintiff is hereby directed to file with the Clerk of this Court, and to serve on all defendants, within 15 days of the date of this Order, a statement as to which of the defendants are record owners or interest holders of (a) claimed lands known or alleged to lie within the territorial boundaries of the Commonwealth of Virginia, and (b) claimed lands known or alleged to lie within the territorial boundaries of the District of Columbia.

So ordered.

date, in the course of this litigation the Court on two separate occasions has been asked to concern itself in two landlord-tenant disputes between co-defendants. Further, one defendant has moved for leave to file a third-party complaint which raises a separate and discrete question of the possible liability of those conveying the lands in controversy to the current record holders or interest holders. It is difficult to conceive that Congress intended that a Federal Court in the District of Columbia would decide these essentially local disputes.