**Jon L. BRYAN, Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COMPENSATION BOARD, Respondent.**

**No. 8804.**

District of Columbia Court of Appeals.

Submitted May 20, 1975.

Decided July 7, 1975.

---

Jon L. Bryan, pro se.

George A. Ross, Washington, D. C., was on the brief for respondent.

Before KERN, YEAGLEY and HARRIS, Associate Judges.

PER CURIAM:

This case was submitted and determined on the record of the hearing before the District Unemployment Compensation Board and the briefs of the parties. Petioner seeks reversal of a decision of the Board which denied him unemployment benefits on the ground that the Board was without jurisdiction over his claim. We affirm.

The facts of this case show that petitioner was employed as an airline pilot with Allegheny Airlines. He flew passenger planes into and out of numerous airports located in various states. However, his base of operations was Washington National Airport. Petitioner's employer reported all base period wages for its employees working at National Airport, including petitioner, to the Commonwealth of Virginia for purposes of unemployment compensation.

When petitioner was laid off in January 1974, he filed a claim for benefits in the District of Columbia. The District Unemployment Compensation Board denied his claim stating that Washington National Airport is located in Virginia and thus the claim should have been filed there, not in the District. A petition was filed in this court for review of the Board's decision.

Petitioner alleges as his sole ground for reversing the Board's decision that Washington National Airport is located "within the bounds of the District of Columbia, as determined by the highwater mark of the Potomac River." Thus, he asserts, he is entitled to unemployment benefits from the District.

The District's Unemployment Compensation Act provides:

(4) Notwithstanding any other provisions of this subsection, the term "employment" shall also include all service performed after January 1, 1955, by an officer or member of the crew of an American vessel or American aircraft on

or in connection with such vessel or aircraft: *Provided,* That the operating office from which the operations of such vessel or aircraft are ordinarily and regularly supervised, managed, directed, and controlled, is within the District. [D.C. Code 1973, § 46–301(b)(4).]

In regard to petitioner's base of operations with Allegheny Airlines, the Appeals Examiner of the District Unemployment Compensation Board found that "the actual physical location of both the airport and the executive office is the State of Virginia". The examiner concluded that

> the employer properly reported the claimant's base period wages to Virginia because all of the claimant's services were performed from a base of operations in Virginia and none of his services constituted employment subject to the District Unemployment Compensation Act. . . .

The boundary between the District of Columbia and Virginia has, in the past, been a matter of much dispute. The United States Supreme Court in the case of *Smoot Sand & Gravel Corporation v. Washington Airport, Inc.,* 283 U.S. 348, 51 S.Ct. 474, 75 L.Ed. 1109 (1931), set the boundary line at the high-water mark of the Potomac on the Virginia shore as it existed when the District of Columbia was created in 1791. That line, however, was not specifically determined and monumented and, due to the fills and dredges in connection with various projects along the river, there was a great deal of confusion about where one jurisdiction ended and the other began. Congress, in 1945, decided to establish the boundary once and for all, and hence enacted a law, 59 Stat. 552 (1945), establishing the boundary as the present mean high-water mark on the Virginia shore of the Potomac River, with some exceptions not here relevant. This action was agreed to by the Commonwealth of Virginia, Va.Code Ann. § 7.1–10 (1973). The new law provided that in the event the shore line later "is altered by artificial fills or excavations made by the United States, or by alluvion or erosion, then the boundary shall follow the new mean high-water mark on the Virginia shore as altered . . . ." (§ 101, 59 Stat. 552 (1945); *see* D.C.Code 1973, § 1–101.)

Applying this statute to National Airport, it is clear that the airport is situated within the boundaries of Virginia. Petitioner appears to argue that because the mailing address of the facility is "Washington, D.C. 20001", we must hold that the airport is in fact within the confines of the District. Petitioner also contends that since jurisdiction over the airport (except for certain state taxes) is in the United States (*see* § 107, 59 Stat. 552, 553 (1945)), it is a "federal reservation" adjacent to the District of Columbia and thus not within the Commonwealth of Virginia. These contentions do not have merit. As we said in *Hemenway v. District Unemployment Compensation Board,* D.C. App., 326 A.2d 776, 778 (1974):

> It is common knowledge that postal zones frequently cross state or municipal boundaries and that many federal agencies are assigned particular code numbers of their own. . . . [A]lthough Arlington and Fairfax counties are part of the metropolitan area, D.C.Code 1973, § 47–604, the District itself does not include land beyond the high-water mark of the Potomac on the Virginia bank of that river. D.C.Code 1973, § 1–101. The suggestion that county authorities might have had little or no police jurisdiction over a federal reservation . . . is irrelevant, for this legal principle applies to some extent to all federal installations throughout the country. This does not mean that they are subject to District of Columbia law.

Accordingly, we conclude that Washington National Airport is within the boundaries of the Commonwealth of Virginia and not within those of the District of Columbia. The employer here correctly

reported petitioner's wages to Virginia. Petitioner was not entitled to unemployment benefits from the District and the District Unemployment Compensation Board was not in error when it denied petitioner's claim.

*Affimed.*