984 F.2d 101
 1993 A.M.C. 1766
 John L. MULLENIX, Plaintiff-Appellant,
v.
UNITED STATES of America; Potomac Edison Company, a/k/a
Potomac Edison Power Company; Ronald L. Crouse;
Riverbend Membership Corporation;
Falling Waters Corporation,
Defendants-Appellees,
and
State of Maryland, Defendant.
 No. 90-1483.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 30, 1992.
Decided Jan. 12, 1993.
 
 Robert G. Blackford, Allen & Blackford, P.C., Gaithersburg, MD, argued, for plaintiff-appellant.
 David Vernon Hutchinson, Asst. Director (Admiralty)/Trial Atty., Civ. Div., U.S. Dept. of Justice, Washington, DC, Marleen Louise Brooks, The Potomac Edison Co., Greenburg, PA, argued (Stuart M. Gerson, Asst. Atty. Gen., Civ. Div., U.S. Dept. of Justice, Washington, DC, Breckinridge L. Willcox, U.S. Atty., Baltimore, MD, for defendant-appellee U.S.; Norbert Smith, The Potomac Edison Co., Greenburg, PA, for defendant-appellee Potomac Edison; Ronald L. Crouse, pro se; Giancarlo M. Chardi, Sasscer, Clagett & Bucher, Upper Marlboro, MD, for defendants-appellees Riverbend Membership and Falling Waters, on brief), for defendants-appellees.
 Before ERVIN, Chief Judge, and BUTZNER and SPROUSE, Senior Circuit Judges.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 John J. Mullenix filed a negligence action against the United States, the State of Maryland,[1] Potomac Edison Company, Riverbend Membership Corporation, Falling Waters Corporation, and Donald L. Crouse to recover for personal injuries sustained when the boat in which he was riding went over Dam No. 5 on the Potomac River. On the United States's and Potomac Edison Company's motions for summary judgment, the district court dismissed Mullenix's case as to all defendants. Mullenix appeals the dismissal of his negligence action, contending alternatively (1) that his claim sounds in admiralty and is subject to the federal common-law doctrine of comparative negligence, or (2) that the United States failed to establish his contributory negligence or assumption of risk under Maryland law. We reverse the district court's decision that admiralty jurisdiction is inapplicable to Mullenix's case, and therefore do not reach the issue of the scope of Mullenix's own negligence in the boating accident.
 
 
 2
 * On June 8, 1986, Mullenix joined Robert Crouse, his wife, and Michael Hough for a day of boating on the Potomac River. From about 5:30 p.m. until approximately 8:30 p.m., the party waterskied in the general vicinity of Dam No. 5, a spill dam spanning the Potomac from the Maryland border to the West Virginia border near Clear Spring, Maryland. The party took several skiing runs up and down the river, using as their downstream turn-around point large signs indicating the presence and danger of the dam. At about 8:30 p.m., Crouse drove the boat to a dock located on the downstream side of the danger signs and moored it while the party ate dinner.
 
 
 3
 About midnight, after eating dinner and drinking beer, Mullenix, Crouse, and Hough decided to get back in the boat and go fishing. Witnesses' accounts vary as to the visibility on the water, but both sides agree that a heavy mist was rising off of the river when the party left the bank. The party proceeded at a slow speed of three to five miles per hour at first as they looked for the dam warning signs. After about five minutes, thinking they had passed the signs, Crouse increased the boat's speed to fifteen to eighteen miles per hour. In fact the boat was going downstream, and within moments went over Dam No. 5 and dropped eighteen feet. Mullenix broke his back in the accident.
 
 
 4
 Mullenix contends that the United States and the appellee corporations owned, controlled, leased, or maintained Dam No. 5 and therefore were responsible for installing adequate lighting on the dam to signal its presence at night or during periods of poor visibility. By failing to provide adequate warning devices beyond the danger signs, he argues, the United States and the appellee corporations proximately caused the boat to go over the dam. In addition, Mullenix contends that Crouse negligently navigated the boat over Dam No. 5.
 
 
 5
 The district court rejected Mullenix's allegations of admiralty jurisdiction because the Potomac River is not subject to the ebb and flow of the tide. Declining to apply admiralty jurisdiction, the district court then analyzed the negligence claims under the laws of Maryland to determine that Mullenix assumed the risk of injury when he set out in the boat the evening of the accident, and, as a consequence, Mullenix could not recover from any appellee.
 
 
 6
 At all times the boating activities and the accident were wholly within the state of Maryland. The Potomac River forms the border between Maryland and the states of West Virginia and Virginia. Resolution of a nineteenth-century boundary dispute by the Supreme Court gave Maryland claim to the entire Potomac River to the low-water mark of its southern shores in West Virginia.[2] Maryland v. West Virginia, 217 U.S. 577, 582, 30 S.Ct. 630, 632, 54 L.Ed. 888 (1910). The Potomac River in the area of the accident supports recreational traffic. The Maryland Department of Natural Resources is the only patrolling authority on the river identified in the record.
 
 II
 
 7
 Mullenix claims that his case arises under the admiralty jurisdiction conferred upon the federal courts by the United States Constitution. U.S. Const. art. III, § 2; 28 U.S.C. § 1333(1). To decide proper cases of admiralty jurisdiction, federal courts draw from the body of federal common law, and in this case would apply the doctrine of comparative negligence. See United States v. Reliable Transfer Co., 421 U.S. 397, 407, 411, 95 S.Ct. 1708, 1713, 1715, 44 L.Ed.2d 251 (1975). If admiralty jurisdiction does not exist, then Mullenix's case remains in federal court under the Federal Tort Claims Act, but the laws of Maryland, the locality of the accident, would apply. D'Angelo v. United States, 456 F.Supp. 127, 132-33 (D.Del.1978), aff'd, 605 F.2d 1194 (3d Cir.1979) (adjudicating federal tort claims arising from accident that occurred in Maryland). Maryland retains the doctrines of contributory negligence and assumption of the risk.
 
 III
 
 8
 The Supreme Court has enunciated a two-part test to determine when cases fall within the admiralty jurisdiction of the federal courts. Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972). The alleged wrong must occur or be located over a navigable waterway, and the wrong must bear a significant relationship to traditional maritime activity. Id.; see also Onley v. South Carolina Elec. & Gas Co., 488 F.2d 758, 759 & n. 1 (4th Cir.1973) (applying, for the first time, the Executive Jet test for admiralty jurisdiction). Although the wrong must satisfy both the locus and the nexus criteria, the parties in this case do not dispute that the facts established bear a significant relationship to the navigation of a vessel, a traditional maritime activity, and therefore satisfy the nexus prong. See Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982); Price v. Price, 929 F.2d 131, 136 (4th Cir.1991).
 
 
 9
 The appellees argue that the Potomac River falls short of satisfying the locus prong because of its wholly intrastate location. Citing our decision in Alford v. Appalachian Power Co., 951 F.2d 30 (4th Cir.1991), the appellees contend that a body of water that is confined within one state is not navigable and does not implicate admiralty concerns. Id. at 32. We reject the appellees' overly narrow construction of Alford.
 
 
 10
 We have judged navigability based on a waterway's capability to bear commercial navigation. Waters are navigable
 
 
 11
 when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.
 
 
 12
 The Daniel Ball, 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1870), quoted in Price, 929 F.2d at 134. Current uses of the waterway go to the issue of navigability but are not conclusive, so a purely recreational waterway can be navigable for admiralty purposes. Price v. Price, 929 F.2d 131, 134 (4th Cir.1991). The Potomac River is wholly within Maryland but not incapable of supporting the movement of commerce between Maryland and West Virginia,[3] making it a navigable waterway for purposes of determining admiralty jurisdiction.
 
 
 13
 The district court based nonnavigability on the fact that the Potomac River "is not subject to the ebb and flow of the tide at Dam No. 5 where this incident occurred," relying on Hassinger v. Tideland Elec. Membership Corp., 781 F.2d 1022 (4th Cir.), cert. denied, 478 U.S. 1004, 106 S.Ct. 3294, 92 L.Ed.2d 709 (1986). Mullenix v. United States, No. HAR 88-204 (D.Md. Apr. 11, 1990). In Hassinger, we addressed the scope of the term "navigable," not the determination of navigability, holding that " 'navigable water' and thus the boundary of admiralty jurisdiction in tidal areas does not ebb and flow with the tide but extends to the mean high water mark at all times." Id. at 1026 (emphasis added). We did not limit admiralty jurisdiction only to those bodies of water that ebb and flow with the tide; instead, we delineated the outer boundary of admiralty jurisdiction once navigability is found to exist.
 
 
 14
 We hold that these facts present a proper case for admiralty jurisdiction. Because the tort described in the complaint occurred on navigable waters and bore a substantial relationship to traditional maritime activity, admiralty jurisdiction was properly invoked by Mullenix, and Mullenix may proceed with his claims of negligence against the United States, Potomac Edison Company, Riverbend Membership Corporation, Falling Waters Corporation, and Donald L. Crouse. The order of the district court granting summary judgment and rejecting the application of admiralty jurisdiction is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.
 
 
 15
 REVERSED AND REMANDED.
 
 
 
 [1]
 On December 1, 1988, the district court granted the State of Maryland's motion to dismiss all claims against it. Mullenix does not appeal this dismissal
 
 
 [2]
 Although not germane to this case, the parties suggest that the Potomac River is entirely within the state of Maryland both along its West Virginia shores and along its Virginia shores. The Supreme Court established the boundary between Maryland and West Virginia in 1910, following the lead of an earlier compact between Maryland and Virginia. Maryland v. West Virginia, 217 U.S. 577, 582, 30 S.Ct. 630, 632, 54 L.Ed. 888 (1910). Maryland and Virginia entered into a compact in 1785 to establish a jurisdictional line for the enforcement of their respective laws. In 1874, the legislators of the two states appointed arbitrators to settle lingering disputes over the exact placement of the border on the Potomac River's southern bank. For a more complete discussion of the formulation of the boundary between Maryland and Virginia, see Morris v. United States, 174 U.S. 196, 222-25, 19 S.Ct. 649, 658-61, 43 L.Ed. 946 (1899); Bostick v. Smoot Sand & Gravel Corp., 154 F.Supp. 744, 749-51 (D.Md.1957), rev'd on other grounds, 260 F.2d 534 (4th Cir.1958)
 
 
 [3]
 Although the record gives no indication that the Potomac River was supporting commercial shipping at the time of Mullenix's accident, the river sustained heavy traffic from sightseeing cruises and ferries transporting passengers to and from Maryland, Virginia, and West Virginia