In re the Complaint of Gary
BERNSTEIN and Claire
Bernstein.

No. Civ.A. 99–10381–WGY.

United States District Court,
D. Massachusetts.

Dec. 28, 1999.

Andrew V. Buchsbaum, Julie Pateman–
Ward, Healy & Baillie, New York City,
Robert E. Collins, Clinton & Muzyka, Bos-
ton, MA, for Gary Bernstein, Claire Bern-
stein.

David F. Anderson, Latti Associates,
Boston, MA, for Michael P. Bergeron, II,
Lori Bergeron, Michael Bergeron.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

I.  INTRODUCTION

As is not infrequently the case, legisla-
tion designed to address and ameliorate a
specific issue has consequences far beyond
and different than the Congress had in-
tended. *See e.g., Andrews–Clarke v. Trav-
elers Ins. Co.,* 984 F.Supp. 49 (D.Mass.
1997) (detailing the unintended perverse
consequences of the Employee Retirement
Income Security Act).  This is another
such case.

On the left corner of the bench in the courtroom where this session of the Court sits there rests a replica of the Silver Oar of Admiralty, the historic symbol of this court's admiralty jurisdiction. See Brainerd Currie, *The Silver Oar and All That: A Study of the Romero Case*, 27 U.Chi. L.Rev. 1, 77–78 (1959); *see also Hark v. Antilles Airboats, Inc.*, 355 F.Supp. 683, 684 n. 1 (D.Virgin Islands 1973). When the Court sits "in admiralty," the "Silver Oar" is moved to the right corner of the bench. The central question in this case is whether to move the oar, i.e., whether admiralty jurisdiction exists.

Here it is alleged that on August 15, 1997, Sean Kelly was operating a small motorboat owned by the plaintiffs Gary and Claire Bernstein (the "Bernsteins") on Lake Winnisquam in New Hampshire. Kelly, who was pulling Michael P. Bergeron, II behind the motorboat in an inner tube, maneuvered in a manner that caused the motorboat to collide with and seriously injure Bergeron. As a result of his injuries, Bergeron and his parents (collectively, the "Bergerons"), filed suit against the Bernsteins in the Superior Court of Massachusetts. In turn, the Bernsteins filed the present petition under the Shipowner's Limitation of Liability Act, 46 App.U.S.C. § 181 et seq., ("the Act"), in an attempt to limit their liability to the value of the motorboat ($7,000). The suit in the Superior Court has been stayed pending the outcome of this petition. Arguing that this case does not fall under the Court's admiralty jurisdiction, the sole basis of subject matter jurisdiction asserted in the petition, the Bergerons filed a motion to dismiss the petition pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## II. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION STANDARD

At the outset of a case, a plaintiff must "establish jurisdiction ... by means of a nonfrivolous assertion of jurisdictional elements...." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). When such jurisdiction is challenged, "the party invoking subject matter jurisdiction ... has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction." *Bank One, Texas N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir.1992). Moreover, "any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone...." *Jerome B. Grubart, Inc.*, 513 U.S. at 537–538, 115 S.Ct. 1043. Here the Bernsteins claim that subject matter jurisdiction in admiralty rests on two alternative grounds: (1) the incident took place on the navigable waters of the United States, and (2) even if it did not, the Limitation of Liability Act creates an independent basis for the assertion of admiralty jurisdiction.

## III. ANALYSIS OF ADMIRALTY JURISDICTION PREMISED ON NAVIGABLE WATERS

A party seeking to invoke federal admiralty jurisdiction over a tort claim pursuant to 28 U.S.C. § 1333(1) [1] must establish both that the wrong occurred upon the navigable waters of the United States (the "locality test") and that the activity giving rise to the incident had a substantial relationship to traditional maritime activity (the "nexus test"). *See Florio v. Olson*, 129 F.3d 678, 680 (1st Cir.1997). As the first ground for their motion to dismiss, the Bergerons contend that Lake Winnisquam, the location of the boating accident, is not part of the "navigable waters of the United States" because it is a land-locked lake located entirely within New Hampshire and, "[b]ecause of numerous lockless dams and hydroelectric stations, it is im-

---

1. Under 28 U.S.C. § 1333(1), the "district courts shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

possible to travel by any type of watercraft from Lake Winnisquam to any other state, to the open ocean, or to any foreign country."[2]  Def.Mem. at 3.

■ As established by the Supreme Court in 1870, waters are "navigable" for the purposes of federal admiralty tort jurisdiction

> when they are used, or are susceptible of being used, in their ordinary condition, as highways of commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.  And they constitute navigable waters of the United States ... when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

*The Daniel Ball,* 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1870).  Although it is not their burden, the Bergerons have effectively established, and the Bernsteins do not deny, that Lake Winnisquam is not "navigable" in its *present state.  See* Report of Captain Nolan.  Curiously, however, the Bernsteins argue and present an impressive amount of historical evidence that Lake Winnisquam would be (and indeed was) "navigable" in its "ordinary condition," i.e., in the absence of dams and hydro-electric stations, via Silver Lake and the Winnipesaukee and Merrimack Rivers. *See* Mower Certification.

While the Bernsteins' historical navigability argument has some basis in the language of *The Daniel Ball,* the federal courts have held that it is only appropriate to consider the *current* status of the body of water when determining its "navigable" character for admiralty tort jurisdiction purposes.  For example, in the leading case of *In re Three Buoys Houseboat Vacations U.S.A. Ltd.,* 921 F.2d 775, 778–779 (8th Cir.1990) (stating that "[t]he standard is one of 'contemporary navigability in fact ...' "), the Eighth Circuit held that a Missouri lake was not navigable because of the existence of a dam and upheld the refusal to exercise federal admiralty jurisdiction over a non-diverse personal injury suit against a charter boat company.  Similarly, in *Alford v. Appalachian Power Co.,* 951 F.2d 30, 33 (4th Cir.1991), relying on "the cases [that] hold uniformly that a historical commercial use of a body of water in a configuration predating the creation of the current configuration does not support admiralty jurisdiction ...," the Fourth Circuit held that "a dammed, lockless lake lying wholly within the State of Virginia" was not navigable and upheld the refusal to exercise federal admiralty jurisdiction over a sailboat owner's personal injury claim.  *See also Adams v. Montana Power Co.,* 528 F.2d 437, 439–41 (9th Cir. 1975)(dam-obstructed portion of Missouri river located entirely in Montana was not navigable); John F. Baughman, Note, *Balancing Commerce, History, and Geography: Defining the Navigable Waters of the United States,* 90 Mich.L.Rev. 1028, 1053 (1992) (citing cases and concluding that "waters landlocked in a single state, whether naturally so or because of dams, are not navigable for admiralty purposes.").[3]  Although the First Circuit has

---

**2.**  Apparently, the Bergerons do not dispute that the incident satisfies the nexus test.

**3.**  There are also a significant number of District Court cases that reject the historical navigability approach.  *See Reynolds v. Bradley,* 644 F.Supp. 42, 44–45 (N.D.N.Y.1986) (Skaneateles Lake in New York not navigable despite impressive amount of historical evidence establishing that lake was once part of Erie Canal system), *Motley v. Hale,* 567 F.Supp. 39, 40 (W.D.Va.1983) (applying "current navigability" test and stating that "conclud[ing] otherwise would push the concept of admiralty jurisdiction over the 'edge of absurdity' "); *Dunham v. DeMaine,* 559 F.Supp. 224, 225 (E.D.Ark.1983) ("[C]urrent status of Lake Hamilton, rather than its historical status, governs navigability...."); *Smith v. Hustler, Inc.,* 514 F.Supp. 1265, 1270 (W.D.La.1981) (holding that in its present state, after construction of dam, lake was not a navigable waterway); *In re Stephens,* 341 F.Supp. 1404,

not directly addressed the issue, it has cited *Three Buoys* and *Alford* with approval while making passing remarks concerning admiralty jurisdiction. *See Acadia Ins. Co. v. McNeil*, 116 F.3d 599, 602 n. 4 (1st Cir.1997) ("[C]ourts have held that a landlocked lake within a single state ... lacks sufficient relation to interstate commerce to sustain federal admiralty jurisdiction.").

The Bernsteins' reliance on cases that adopt a historical navigability approach is sorely misplaced. All of the cases adopting the historical approach in the context of admiralty tort jurisdiction have either been overruled or superseded. *See Jones v. Duke Power Co.*, 501 F.Supp. 713, 716 (W.D.N.C.1980) ("[O]nce navigable, always navigable."), *overruled by Alford, supra; Complaint of Rowley*, 425 F.Supp. 116, 117–18 (D.Idaho 1977) (holding that Lake Couer d'Alene was navigable even though "it is not possible to reach ports of call other than in the State of Idaho without removing the vessel or boat onto land and transporting it to another body of water."), *overruled by Adams, supra; Watring v. Unnamed Inboard Motor Boat*, 322 F.Supp. 1226 (S.D.W.Va.1971) ("If [r]iver was, in fact, navigable, or susceptible of being so used in its natural and ordinary condition ..., the fact that [d]am presently artificially obstructs its navigability would not remove it from admiralty jurisdiction."), *overruled by Alford, supra; Ma-*

*dole v. Johnson*, 241 F.Supp. 379, 383 (W.D.La.1965) (holding that lake navigable before construction of lockless dams was navigable), *superseded by Smith, supra.* The Bernsteins likewise cannot rely on those cases that consider historical navigability to delineate Congress' power under the Commerce Clause to regulate interstate waterways[4] because the Supreme Court has indicated that such rulings should not govern the definition of "navigable waters" for the purposes of federal admiralty tort jurisdiction. *See Kaiser Aetna v. United States*, 444 U.S. 164, 171, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (stating that reliance on "judicial precedent must be predicated upon careful appraisal of the purpose for which the concept of 'navigability' was invoked in a particular case.") (internal citation omitted).

■ In light of overwhelming rejection of the historical navigability approach, this Court rules that Lake Winnisquam is not "navigable." The Bergerons have presented competent and uncontested proof that, under contemporary circumstances, it is impossible to use the lake to carry commerce "with other States or foreign countries in the customary modes in which such commerce is conducted by water." *The Daniel Ball*, 77 U.S. at 563. Accordingly, the Bernsteins cannot premise federal admiralty jurisdiction on the locus of the accident alone.[5]

---

1407 (N.D.Ga.1965) (lake in Georgia formed by dam construction was not a navigable water sufficient to support admiralty jurisdiction).

4. *See, e.g., Economy Light & Power Co. v. United States*, 256 U.S. 113, 122, 41 S.Ct. 409, 65 L.Ed. 847 (1921) (holding that river incapable of interstate travel only because of artificial obstructions was navigable for purposes of federal statute requiring consent of Congress to build dams on navigable waterways). Cases that adopt a historical navigability test for federal admiralty tort jurisdiction but rely on cases like *Economy Light & Power* are similarly flawed. *See, e.g., Sawczyk v. United States Coast Guard*, 499 F.Supp. 1034 (W.D.N.Y.1980).

5. Notably, without discussing the applicability of the historical navigability test, two courts in this Circuit have held that Lake Winnipesaukee (a neighboring and similarly landlocked lake) is not a navigable water. *See Rowe v. Winnepesaukee Flagship Corp.*, No. Civ. 93–552–SD, 1994 WL 279750, at *1 (D.N.H. June 20, 1994); *Marine Office of Am. v. Manion*, 241 F.Supp. 621, 622 (D.Mass. 1965) (Sweeney, C.J.) (noting, however, that plaintiff offered no evidence to support contention that navigation can proceed from Lake Winnipesaukee to the sea by way of the Winnipesaukee and Merrimack Rivers). The Bernsteins' reliance on *United States v. Granite State Packing Co.*, 343 F.Supp. 57, 60–61 (D.N.H.1972), *aff'd* 470 F.2d 303 (1st Cir. 1972), wherein a District Court in this Circuit deemed one of Lake Winnisquam's connect-

## IV. ANALYSIS OF ADMIRALTY JURISDICTION PREMISED ON LIMITATION OF LIABILITY ACT

■ As an alternative to the historical navigability approach, the Bernsteins contend that the Act provides an independent basis for federal subject matter jurisdiction. Congress enacted the Act in 1851 "to encourage investments in ship building by protecting the ship owner, thereby placing American maritime trade upon equal footing with the maritime competition (such as England) who enjoyed limited liability under their own flags." *In re Stephens*, 341 F.Supp. at 1405–1406. The Act, which applies "to all vessels used on lakes or rivers or in inland navigation," 46 App.U.S.C. § 188, limits the liability of the vessel owner for "any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners [to] the amount of value of the interest of such owner in such vessel ...," *id.* at § 183.

### A. *Supreme Court's Consideration of the Act's Jurisdictional Impact*

In 1886, the Supreme Court ruled that an early version of the Act did not by itself give rise to federal subject matter jurisdiction. *See Ex parte Phenix Ins. Co. of Brooklyn, NY*, 118 U.S. 610, 619, 7 S.Ct. 25, 30 L.Ed. 274 (1886) ("[A]s the owners of the burned property could not sue originally in the admiralty for their damages, it is impossible to see how, by the present form of proceeding [under the Act], the owner of the steamer can give to the admiralty court jurisdiction to entertain the suits for the damage by a practical removal of them into the admiralty court."). Twenty-five years later, however, the Supreme Court reversed its course and held that the Act, as amended, applied to "all

claims arising out of the conduct of the master and crew, whether the liability be strictly maritime or from a tort non-maritime...." *Richardson v. Harmon*, 222 U.S. 96, 106, 32 S.Ct. 27, 56 L.Ed. 110 (1911). In reaching this conclusion, the Supreme Court asserted federal jurisdiction over a claim that did not otherwise give rise to admiralty jurisdiction.[6] This Supreme Court holding has not been lost on the major commentators which continue to teach *Richardson* as the law of the land. *See* S. Friedell, *Benedict on Admiralty*, vol. 1 § 225 (7th ed.) (1999 Supp.) ("Proceedings by vessel owners to limit their liability as permitted by the Acts of Congress are within admiralty jurisdiction even if the claims limited against might not be sued upon in admiralty."); G. Gilmore & C. Black, *The Law of Admiralty*, 846 (2d Ed.1975) ("The hornbook law of the matter today is that § 189 ... extended the Limitation Act to cover non-maritime claims."). Although timeworn, *Richardson* was cited with approval by the Supreme Court as recently as 1973. *See Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 330, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973) (citing *Richardson* for proposition that Act extends to damages caused by oil spills even where the injury is to the shore).

The viability of *Richardson* was arguably raised by the Supreme Court in two fairly recent cases. First, in *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), the parties argued in the lower courts whether the Act provided an independent basis for jurisdiction but the Supreme Court stated that it "need not decide which party is correct, for even were we to agree that the Limited Liability Act does not independently provide a basis for this action, § 1331(1) is sufficient

---

ing rivers navigable, is unavailing because the analysis concerned navigability for the purposes of the Commerce Clause.

**6.** Notably, the Act at that time did not expressly apply to liability arising out of colli-

sions with the shore. Since *Richardson*, Congress has so extended the Act. *See* Extension of Admiralty Jurisdiction Act, 46 App.U.S.C. § 740.

to confer jurisdiction." *Id.* at 359 n. 1, 110 S.Ct. 2892. Similarly, in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), because independent jurisdiction existed under section 1331(1), the Supreme Court stated that it "need not consider respondent['s] ... argument that the [Act] provides an independent basis of federal jurisdiction over the complaint." *Id.* at 543 n. 5, 115 S.Ct. 1043. By failing to mention *Richardson* in both *Sisson* and *Jerome B. Grubart,* and apparently treating the issue as open, one might conclude that the Supreme Court now doubts the 1886 decision.

### B. *Contemporary Consideration of the Act's Jurisdictional Impact*

Primarily because the Act is "in the nature of a defense ...," every Circuit Court to consider the issue in the last ten years has held that the Act does not provide an independent basis of federal jurisdiction. *See Seven Resorts, Inc. v. Cantlen,* 57 F.3d 771, 773 (9th Cir.1995); *Sea Vessel, Inc. v. Reyes,* 23 F.3d 345, 348 n. 6 (11th Cir.1994); *David Wright Charter Serv. of N. Carolina, Inc. v. Wright,* 925 F.2d 783, 785 (4th Cir.1991); *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts,* 921 F.2d 775, 779–80 (8th Cir.1990); *Guillory v. Outboard Motor Corp.,* 956 F.2d 114, 115 (5th Cir.1992). Although several of these decisions fail to mention or distinguish *Richardson,* the Ninth Circuit in *Seven Resorts* described *Richardson* as "a historical anomaly that cannot be fairly reconciled with modern admiralty jurisdiction" because the *Richardson* Court "expanded the jurisdictional reach of the Act beyond the then-existing parameters of admiralty jurisdiction in order to effect the amendment's goal of improving the competitive posture of American shipping." *Seven Resorts,* 57 F.3d at 772. In light of the fact that the reach of the Act and admiralty jurisdiction are once again coextensive, the Seventh Circuit essentially discarded *Richardson* as historically flawed. *See also David Wright Charter,* 925 F.2d at 785 ("Neither *Richardson v. Harmon* nor the Extension of Admiralty Jurisdiction Act purports to provide admiralty jurisdiction for torts involving vessels that are not on navigable waters.").

Respectfully, the doctrine of *stare decisis* ought not be so lightly discarded. Where the Supreme Court has spoken to an issue, it is the duty of the lower federal courts to follow that analysis without regard to arguably changed conditions. Indeed, the First Circuit has very recently acknowledged the duty of the lower federal courts to follow the Supreme Court's "directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the [Supreme] Court the prerogative of overruling its own decisions." *National Foreign Trade Council v. Natsios,* 181 F.3d 38, 59 (1st Cir.1999) (*quoting Agostini v. Felton,* 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 [1997] ). *Jones v. Alfred H. Mayer Co.,* 379 F.2d 33, 43 (8th Cir.1967) (Blackmun, J.) ("It is not for our court, as an inferior one, to give full expression to any personal inclination any of us might have and to take the lead in expanding constitutional precepts when we are faced with a limiting Supreme Court decision which, so far as we are told directly, remains good law."), *rev'd* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). *See generally* Judge Richard Arnold's discussion of the propriety and importance of then Judge Blackmun's analysis in Richard Arnold, *In Memoriam: Harry A. Blackmun,* 113 Harv. L.Rev. 10, 12–14 (1999). When lower courts overlook, disregard, or abandon precedent, they undercut the ability of the Supreme Court clearly to teach the law, *see generally* Benjamin N. Cardozo, *The Nature of the Judicial Process* 149–50 (1921); Karl N. Llewellyn, *The Bramble Bush* 64–66 (2d ed.1951); Evan Caminker, *Why Must Inferior Courts Obey Superior Court Precedents,* 46 Stan.L.Rev. 817 (1994); *but see* David M. Becker, *Debunking the Sanctity of Precedent,* 76 Wash.

U.L.Q. 853 (1998), and sharply diminish the law's ability to resolve disputes through private ordering. *See generally* Thomas R. Lee, *Stare Decisis in Court,* 52 Vand.L.Rev. 647 (1999). What's more, as this Court has had occasion recently to discuss, *see Fireman v. United States,* 20 F.Supp.2d 229 (1998), the doctrine of prospective overruling is deeply flawed. *But see* Simon Fireman, *No Justice* (defending the doctrine from a highly personal perspective). Since the reasoning of *Richardson* applies to this case, this Court has no choice but to follow it even though the Act's purpose clearly is limited to protecting and improving American's maritime commerce. In so doing, this Court follows the jurisprudence of this district which, as a court sitting frequently in admiralty, has had a number of occasions to consider the independent jurisdictional impact of the Act since *Richardson.* It is true that in 1921 Judge Morton inexplicably relied on *Ex parte Phenix,* which had been essentially overruled by *Richardson,* to hold that a federal district court "cannot take jurisdiction of a petition for limitation of liability where it would not have had jurisdiction in admiralty originally of the cause of action involved ...," *The Laforrest L. Simmons,* 276 F. 61, 62 (D.Mass.1921), but since then at least three decisions in this District have squarely sided with *Richardson. See The Trim Too,* 39 F.Supp. 271, 273 (D.Mass.1941) (Brewster, J.); *City of Bangor,* 13 F.Supp. 648, 649 (D.Mass.1936) (McLellan, J.); *The Irving F. Ross,* 8 F.2d 313, 314 (D.Mass.1923) (Brewster, J.).

While the manifest history of the Act demonstrates its inapplicability to the circumstances of this case, and the age of *Richardson,* the Supreme Court's arguable disregard for its own holding, and the overwhelming disapproval by the Courts of Appeals presents a compelling rationale for rejecting a theory of independent jurisdiction under the Act, this Court concludes that it has no choice but to heed the rule of *stare decisis* and follow *Richardson.*

## V. CONCLUSION

Accordingly, while there is no federal admiralty tort jurisdiction based on the navigability of the Winnisquam, this Court holds that the Act confers independent jurisdiction and DENIES the motion to dismiss. [Docket No. 21]

The Silver Oar moves to the right; this Court has admiralty jurisdiction over this matter.