Margaret **CASCIANI** and
Anthony **Casciani**

v.

Jeanne **PRUETT,** and Eddie **Fulton**
a/k/a Edward **Fulton.**

No. 3:99–1036.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 9, 2000.

John Edger Acuff, Cookeville, TN, David S. Stern, Rochester, NY, for plaintiff.

Thomas Clifford Corts, Nashville, TN, for defendant.

*MEMORANDUM*

CAMPBELL, District Judge.

I. *Introduction*

Pending before the Court is Defendants' Motion For Summary Judgment (Docket No. 10). For the reasons set forth below, Defendants' Motion is GRANTED, and this case is dismissed.

II. *Procedural and Factual Background*

Plaintiffs filed this action "under the General Maritime Law of the United States, including Breach of Warranty of Seaworthiness and all statutes amendatory thereof" to recover damages for injuries suffered by Plaintiff Margaret Casciani while aboard a houseboat, The Satin Sheets, owned by Defendants. (Complaint (Docket No. 1)). The accident occurred while the boat was docked at the Edgar Evans Marina on Center Hill Lake in Middle Tennessee. (Plaintiffs' Response To Defendants' Statement Of Material Facts To Which There Is No Genuine Issue For Trial, at ¶ 1 (Docket No. 19) (hereinafter "Plaintiffs' Response To Facts")). Plaintiff Margaret Casciani seeks to recover for injuries she sustained when she fell into a hole on the deck of the boat. (Complaint (Docket No. 1)). Plaintiff Anthony Casciani seeks to recover for loss of consortium. (*Id.*)

Defendants have moved for summary judgment on the ground that this case is not within the Court's admiralty jurisdiction.

III. *The Standards for Considering Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In order to prevail, the movant has the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the movant has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In order to defeat the motion, the non-moving party is required to show, after an adequate time for discovery, that there is a genuine issue of fact as to every essential element of that party's case upon which he will bear the burden of proof at trial. *Celotex Corp.*, 106 S.Ct. at 2553. In order to create a genuine factual issue, the nonmoving party must show "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Although the nonmovant need not show that the disputed issue should be resolved in his favor, he must demonstrate that there are genuine factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*

A preponderance of the evidence standard is used in this determination. *Id.* Therefore, if the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative," the motion for summary judgment may be granted. *Id. See also Matsushita Electric*, 106 S.Ct. at 1356.

## IV. *Analysis*

The Constitution specifically provides for federal court jurisdiction in admiralty cases. U.S. Const., Art, III, § 2. Congress has codified that grant of jurisdiction in 28 U.S.C. § 1333(1), which vests federal district courts with original and exclusive jurisdiction of "[a]ny civil case of admiralty or maritime jurisdiction."

■ The Supreme Court has set forth a two-part test for determining whether an action falls within the admiralty jurisdiction of the federal courts. First, the incident at issue must have occurred on or over navigable waters. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043, 1047, 130 L.Ed.2d 1024 (1995). Second, the activity giving rise to the incident must have had a substantial relationship to traditional maritime activity and had a potentially disruptive impact on maritime commerce. *Id.See also LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2nd Cir.1999).[1]

With regard to the first requirement, the federal courts have held that navigable waters are waters that "form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water." *LeBlanc*, 198 F.3d at 357 (quoting *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 10 L.Ed. 999 (1870)). *See also Finneseth v. Carter*, 712 F.2d 1041, 1043 (6th Cir.1983).

Defendants argue that admiralty jurisdiction does not exist in this case because Center Hill Lake is not an interstate waterway. To support their argument, they have submitted an affidavit from Richard H. Puckett, Operations Project Manager for the Middle Cumberland Area for the Nashville District of the U.S. Army Corps of Engineers. (Docket No. 17). Mr. Puckett states, and the Plaintiffs admit, that Center Hill Lake is located entirely within the State of Tennessee. (*Id.*; Plaintiffs' Response To Facts, at ¶ 5). According to Mr. Puckett, Center Hill Lake was created when Center Hill Dam was completed in 1948. (*Id.*). The dam is located 26.6 miles from the confluence of the Caney Fork River and the Cumberland River. (*Id.*) Plaintiffs agree with Mr. Puckett that there is no direct means of travel between the Lake and the Caney

---

1. The Supreme Court has held that pleasure boat accidents have a significant relationship to traditional maritime activity because of the potential disruptive impact of a collision between boats on navigable waters. *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). The Court need not determine whether the accident on Defendants' boat satisfies this standard, however, because, as discussed below, Plaintiffs are unable to satisfy the first requirement.

Fork River or the Cumberland River. (*Id.;* Plaintiffs' Response To Facts, at ¶ 3).

■ Based on these undisputed facts, Center Hill Lake is not a navigable waterway because it cannot act as a continuous highway of commerce between two states or with a foreign country. Other courts have also held that waterways located wholly within one state and having no interstate access are not navigable waters for purposes of admiralty jurisdiction. *See, e.g., LeBlanc,* 198 F.3d at 357; *Guillory v. Outboard Motor Corp.,* 956 F.2d 114, 115 (5th Cir.1992); *Alford v. Appalachian Power Co.,* 951 F.2d 30, 33–34 (4th Cir. 1991); *Three Buoys Houseboat Vacations USA Ltd. v. Morts,* 921 F.2d 775, 779 (8th Cir.1990). *Cf. Finneseth,* 712 F.2d at 1044 (Dale Hollow Lake held to be navigable interstate waterway because it "straddles Kentucky and Tennessee," even though traffic on the lake is prevented from traveling downstream by the lockless dam.)

Plaintiffs argue that the Cumberland River has been held to be navigable [2], and "the tributary of the Cumberland to which Center Hill Lake owes its provenance was also navigable as an historic fact when it was in its natural condition." (Brief In Opposition To Defendants' Motion For Summary Judgment, at 5 (Docket No. 18)). In other words, Plaintiffs appear to argue that because the Lake may have been navigable at some point in the past, the navigability test is satisfied. This "historic navigability" standard, however, has been rejected by the courts. *See e.g., LeBlanc,* 198 F.3d at 358 ("[E]very circuit court to confront the question has rejected the historic navigability jurisdictional test when determining admiralty jurisdiction."); *Three Buoys Houseboat Vacations,* 921 F.2d at 778. Instead, the courts have held that an historically navigable waterway does not remain navigable when it is sepa-rated from any interstate waterway by an artificial obstruction, such as a dam. *Id.*

Plaintiffs also argue that there is federal jurisdiction over the waters of Center Hill Lake because the federal government has a dominate servitude over the waters lying on state lands. The extent of federal involvement in the regulation of a waterway, though relevant for some purposes, is not relevant for determining whether the Court should exercise admiralty jurisdiction. *Kaiser Aetna v. United States,* 444 U.S. 164, 100 S.Ct. 383, 388, 62 L.Ed.2d 332 (1979) ("[A]ny reliance upon judicial precedent must be predicated upon careful appraisal of the purpose for which the concept of 'navigability' was invoked in a particular case.")

Plaintiffs also argue that the commercial activities on Center Hill Lake impact interstate commerce, and submit various web pages relating to those activities to support their argument. (Attachments to Docket No. 20). Whether activity on the Lake impacts interstate commerce, however, does not further the inquiry as to whether the Lake is a navigable waterway. Any commercial activity that takes place on the Lake "does not amount to the commercial shipping between states or with foreign countries that enables the exercise of admiralty jurisdiction." *Alford,* 951 F.2d at 34.

## V.  *Conclusion*

For the reasons described above, summary judgment is granted in favor of the Defendants, and this action is dismissed.

It is so ORDERED.

---

2.  Plaintiffs cite *Goodin's Executor v. Kentucky Lumber Co.,* 90 Ky. 625, 14 S.W. 775 (1890) for this proposition. In *Goodins Executor,* a negligence case, the Kentucky Court of Appeals held that the Cumberland River was subject to a public easement because in its natural condition, "it is capable of being used for floating vessels, rafts, logs, etc., and has in the past been used for that purpose ..." 14 S.W. at 775. Admiralty jurisdiction was not at issue in the case.