**In re MADISON COAL & SUPPLY CO., INC., As Owner of the M/V Drema G. Woods, Official Number 259718, For Exoneration From or Limitation of Liability.**

**No. CIV.A. 3:03-0147.**

United States District Court, S.D. West Virginia, Huntington Division.

June 24, 2003.

Todd M. Powers, Schroeder, Maundrell, Barbiere & Powers, Cincinnati, OH, for Plaintiffs.

R. Scott Long, Hendrickson & Long, Charleston, WV, Robert R. Miller, Oths, Heiser & Miller, Wellston, OH, for Respondents.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

Pending is Respondent's, Daniel E. Johnson, Individually, and as Administrator of the Estate of Dwight Andrew Johnson, Motion to Dismiss Petitioner's Complaint for Exoneration from or Limitation of Liability for Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b). For the reasons that follow, the Court **GRANTS** Respondent's Motion to Dismiss for Lack of Subject Matter Jurisdiction and **DISMISSES** Petitioner's Complaint from the docket of this Court.

### I. Facts

The complaint, together with the papers filed by both parties with respect to this Motion, alleges the following facts. On or about December 10, 2000, Brett Castle (hereinafter "Castle"), an employee of Petitioner, Madison Coal & Supply Co., Inc. (hereinafter "Petitioner" or "MC & S"), was working as a deckhand aboard the *M/V Drema G. Woods.* Sometime after his shift ended Castle was permitted to leave the vessel in Winfield, West Virginia, whereupon he subsequently became intoxicated. Several hours later in Pt. Pleasant, West Virginia, Castle, in his intoxicated state, operated an automobile, crossed the

center line, and struck Respondent's decedent, Dwight Andrew Johnson, killing Mr. Johnson. Respondent, individually, and on behalf of the estate of decedent, Dwight Andrew Johnson, filed suit on or about December 9, 2002, in the Circuit Court of Mason County, West Virginia. MC & S is one (1) of the defendants named in that civil action. Claims were made by the administrator of the estate against the Petitioner for numerous causes of action, including vicarious liability negligence and negligent hiring, retention and supervision of Castle. MC & S has filed a Complaint for Exoneration From or Limitation of Liability in this Court asserting this Court's jurisdiction based on the allegation that the underlying action is "an admiralty and maritime claim" within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Respondent subsequently filed a Motion to Dismiss MC & S's Complaint. That Motion is now ripe for decision.

## II. Law

### A. Limited Liability Act as an Independent Basis of Jurisdiction

The Limitation of Liability Act, 46 U.S.C.app. § 183 *et seq.*, was enacted in 1851 and unequivocally applies to all vessels used on lakes or rivers or in inland navigation. It limits the liability of a vessel owner for "any loss, damage or injury by collision, or for any act, matter, or thing, loss, damage or forfeiture, done, occasioned or incurred without the privity or knowledge of such owner or owners to the amount of value of the interest of such owner in such vessel..." *Id.* at § 183. In *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), the United States Supreme Court recognized that whether the Limitation Act is an independent basis for admiralty jurisdiction remains an open question, despite Petitioner's faulty assertion that the Court's ruling in *Richardson v. Harmon,* 222 U.S. 96, 32 S.Ct. 27, 56 L.Ed. 110 (1911), held the Act *did* provide an independent basis of jurisdiction. Rather, in *Richardson v. Harmon* the Court anticipated by judicial decision a maritime policy that Congress later recognized in the Extension of Admiralty Jurisdiction Act, 46 U.S.C.app § 740, which was enacted in 1948. The Act, like *Richardson v. Harmon,* enlarges admiralty jurisdiction for harm caused by a vessel on navigable water to persons or property on land.

Although the Court found it unnecessary to decide the jurisdictional issue in *Sisson,* numerous lower courts have decided the issue. The Act, primarily because its nature is that of a defense, has been consistently interpreted by courts to *not* provide an independent basis for federal jurisdiction. *See, e.g., In re Bernstein,* 81 F.Supp.2d 176, 181 (D.Mass.1999). Most importantly, the Fourth Circuit has plainly decided the issue in *David Wright Charter Service of North Carolina, Inc. v. Wright,* 925 F.2d 783, 785 (4th Cir.1991), stating, "In concert with the Seventh, Eighth, and Eleventh Circuits, we conclude that the Limitation Act is not a source of admiralty jurisdiction. Rather it is a procedure that may be invoked when general admiralty and maritime jurisdiction has been established."

### B. Admiralty Jurisdiction Pursuant to 28 U.S.C. § 1333

A federal court's authority to hear cases in admiralty flows initially from the Constitution which "extend[s]" federal judicial power "to all Cases of admiralty and maritime Jurisdiction." U.S. Const. Art. III, § 2. Congress has embodied that power in a statute giving federal district courts "original jurisdiction...of...[a]ny civil case of admiralty or maritime jurisdiction..." 28 U.S.C. § 1333(1). The traditional test for admiralty tort jurisdiction asked only whether the tort occurred on

navigable waters. If it did, admiralty jurisdiction followed; if it did not, admiralty jurisdiction did not exist. Courts used a simple locality test where the injury had to be "wholly" sustained on navigable waters for the tort to be within their admiralty jurisdiction. *See, e.g., The Plymouth,* 3 Wall. 20, 34, 18 L.Ed. 125 (1866).

This latter rule was changed in 1948, however, when Congress enacted the Extension of Admiralty Jurisdiction Act, 62 Stat. 496. The Act provided that, "[t]he admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C.app. § 740. The purpose of the act was to end concern over the sometimes confusing line between land and water, by investing admiralty with jurisdiction over "all cases" where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land. *See, e.g., Gutierrez v. Waterman S.S. Corp.,* 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); *Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 260, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

After this congressional modification to gather the odd case into admiralty, the jurisdictional rule was qualified again in three Supreme Court decisions aimed at keeping a different class of odd cases out. In the first case, *Executive Jet,* the Court held that admiralty lacked jurisdiction to consider the claims. The Court found that "a purely mechanical application of the locality test" was not always "sensible" or "consonant with the purposes of maritime law." 409 U.S. at 261, 93 S.Ct. 493. The Court held that "claims arising from airplane accidents are not cognizable in admiralty" despite the location to the harm, unless "the wrong bear[s] a significant relationship to traditional maritime activity." *Id.* at 268, 93 S.Ct. 493. In the second decision, *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), the Court held that admiralty courts had jurisdiction over tort claims arising out of the collision of two pleasure boats in a navigable river estuary. The Court found the necessary relationship identified in *Executive Jet* was satisfied because of "[t]he potential disruptive impact [upon maritime commerce] of a collision between boats on navigable waters, when coupled with the traditional concern that admiralty law holds for navigation..." *Foremost Ins. Co.,* 457 U.S. at 675, 102 S.Ct. 2654. Finally, in *Sisson,* 497 U.S. 358, 110 S.Ct. 2892, the Court elaborated on the enquiry exemplified in *Executive Jet* and *Foremost* by focusing on two points to determine the relationship of a claim to the objectives of admiralty jurisdiction. The Court held that when the incident causing the harm was of a sort "likely to disrupt [maritime] commercial activity" and when there was a "substantial relationship" with "traditional maritime activity" in the kind of activity from which the incident arose, federal admiralty court jurisdiction existed. *Id.* at 363, 365–367, 110 S.Ct. 2892.

After *Sisson,* then, a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. Failure to establish either the location or the connection test is fatal to an assertion of admiralty jurisdiction. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. *See* 46 U.S.C.app. § 740. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," *Sisson,* 497 U.S. at 363,

110 S.Ct. 2892, to determine whether the incident has a "potentially disruptive impact on maritime commerce," *id.* at 364, n. 2, 110 S.Ct. 2892. Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Id.* at 365, 364, and n. 2, 110 S.Ct. 2892. We now apply the tests to the facts of this case.

## III. Analysis

### A. Fourth Circuit has Ruled that Limited Liability Act Does Not Provide an Independent Basis of Jurisdiction

Given the Fourth Circuit Court's ruling in *David Wright Charter Service of North Carolina,* 925 F.2d at 785, that the Limited Liability Act is not itself a source of admiralty jurisdiction, but rather a procedure that may be invoked when general admiralty and maritime jurisdiction has been established, the Petitioner's argument that the Act provides an independent basis of jurisdiction must fail. Therefore, the proper first inquiry for this Court in ruling on Respondent's Motion to Dismiss Petitioner's Complaint is whether general admiralty and maritime jurisdiction exists. Only if Petitioner has established a general admiralty and maritime jurisdictional basis will the Court address the applicability of the Limited Liability Act.

### B. Admiralty Jurisdiction

#### 1. Location Test

The location test requires determining whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. 46 U.S.C.app § 740. Clearly the tort in this case was not caused by a vessel while on navigable water, such as to meet the mere situs test, though the vessel itself was located on navigable water. Therefore, Petitioner must show that the injury, though suffered on land, was *caused by a tortious act done by the vessel while on navigable waters.* Petitioner is unable to make that showing given the facts of this case; the vessel itself had no part in the automobile accident that occurred on land. Nevertheless, Petitioner attempts to persuade the Court that the *decision made aboard the vessel* to allow Castle to leave the vessel was the proximate cause of the automobile accident, thereby satisfying the "caused by the vessel" language of the location test. The Court agrees that the "caused by" language in the Act has been read to require traditional tort law "proximate causation." *See, e.g., Pryor v. American President Lines,* 520 F.2d 974, 979 (4th Cir.1975). However, the Court finds the alleged proximate cause relationship here to be tenuous at best, and the causal link between the decision to allow Castle to leave work, even though he was to return to work a number of hours later, and the automobile accident to be too far removed. Castle was not intoxicated when the decision was made aboard the vessel to allow him to leave the vessel. Castle was not expected to perform work-related activities while off the vessel. Moreover, despite the requirement that Castle meet back up with the vessel later that day at another port to resume working, Castle was "off-duty" when the tort occurred. Therefore, the Court cannot find that the decision made aboard the vessel, to allow Castle to leave the vessel, establishes proximate cause and meets the location test when so many intervening causes, and possibly superseding causes, occurred between the time of the decision granting Castle permission to leave and the accident.

Courts have not found the locality test is met when the accident occurs on land, in an ordinary non-maritime activity, twenty miles away from the waterway and the vessel. *See In re Nolty J. Theriot, Inc.,* 841 F.Supp. 209 (S.D.Tex.1994). This same lack of connection of the tort to the

vessel distinguishes this case from the cases where the locality test has been met, despite the fact the tort occurred on dry land, away from the vessel. *See, e.g., Thier v. Lykes Bros., Inc.,* 900 F.Supp. 864 (S.D.Tex.1995). If in this case the automobile accident had occurred while on a land-based errand, during a port call in mid-voyage, the requisite physical connection to the vessel might be said to exist, but that is not this case.

Assuming, however, for the purposes of further analysis, that the location test *is* in fact satisfied, the Court will now address whether the connection test is also satisfied, thereby establishing general admiralty and maritime jurisdiction.

**2. Connection Test**

The first inquiry of the connection test is whether the incident involved was of a sort with the potential to disrupt maritime commerce. Case law instructs that when applying this prong of the test courts should describe the features of the incident in question at an intermediate level of possible generality, without considering the precise circumstances giving rise to the case before it. *See Sisson,* 497 U.S. at 363, 110 S.Ct. 2892; *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 538, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); *Weaver v. Hollywood Casino–Aurora, Inc.,* 255 F.3d 379, 385 (7th Cir.2001). Petitioner argues that this case is generally characterized as "negligence of a vessel's captain in control of the vessel's crew resulting in a land-based injury to a third-party caused by the unsupervised crew member." However, the Court does not find that characterization to follow the mandate of *Sisson* and its progeny. Rather, the Court finds that the "general features" of the incident at issue here are best described as *a land-based automobile accident between a temporarily off-duty vessel crew member and a third-party.* Characterized as such, it does not seem that this is the kind of incident that has a potentially disruptive impact on maritime commerce.

Assuming, for the purpose of further connection test analysis, that this incident *is* potentially disruptive on maritime commerce, the next inquiry is whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *Sisson,* 497 U.S. at 364, 110 S.Ct. 2892. Here, the Court asks whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand. In asking the aforementioned question, the Supreme Court has determined that navigation of boats in navigable waters clearly falls within the substantial relationship, *Foremost,* 457 U.S. at 675, 102 S.Ct. 2654; storing them at a marina on navigable waters is close enough, *Sisson,* 497 U.S. at 367, 110 S.Ct. 2892; whereas in flying an airplane over the water, *Executive Jet,* 409 U.S. at 270–271, 93 S.Ct. 493, as in swimming, *id.* at 255–256, 93 S.Ct. 493, the relationship is too attenuated.

The activity giving rise to the incident in this suit can be characterized as an off-duty vessel crewman operating an automobile, on land, while intoxicated. Described in this way, the activity, without question, *is not substantially related* to traditional maritime activity. Additionally, other district courts have addressed similar facts and have arrived at the same conclusion. For example, in *Nolty J. Theriot, Inc.,* 841 F.Supp. 209, a vessel owner brought an action to limit its liability for injuries suffered by crew members in a car accident (the car was owned by *Theriot*) on their

way to the vessel for crew change. The court found that they lacked jurisdiction in part because, "a car wreck on dry land with no particular relation to a vessel or maritime commerce, except that the vehicle has passengers going to join a ship, does not bear sufficient relation to traditional maritime activity." *Id.* at 211. In *In re Complaint of Luhr Bros., Inc.*, 100 F.Supp.2d 1156, 1161 (E.D.Mo.2000), the court found that both the locality and connection tests were lacking because of the remote time and place of the accident, the lack of facts to indicate that the injuries suffered on land were caused by a vessel on navigable water, and because the motor vehicle accident was not related to any particular activity aboard the vessel.

Nevertheless, Petitioner argues that the second prong of the connection test is met because maintaining its maritime industry business requires crewing, managing and controlling the vessel and its operations, and Petitioner's alleged negligent acts occurred in the scope of such activities. Furthermore, Petitioner claims because the alleged negligence commenced on navigable waters and is closely related to the vessel's operations, admiralty jurisdiction over this case is compulsory. The Court disagrees.

In this case, the automobile accident occurred on dry land and was not related to any particular activity aboard the vessel, despite the fact that Castle was to return to work at the vessel later that day. The Court cannot agree with Petitioner that the "decision" made on the vessel, to allow Castle to leave the vessel temporarily, bears a sufficient relation to any traditional maritime activity. If the Court were to agree with Petitioner that a sufficient relationship to traditional maritime activity existed, based on the facts of this case, then the intent behind admiralty jurisdiction and the Act would no longer be reflected in courts' interpretations and applications of it. Clearly, decisions made by the captain of the vessel can affect land-based activities, but this Court cannot find a land-based tort to fall within admiralty jurisdiction without the requisite connection of the *tort* itself to maritime commerce, *as well as* the requirement that the *activity giving rise to the incident* demonstrate a substantial relationship to traditional maritime activity. As such, with respect to the second prong of the connection test, the Court in this case finds that the automobile accident in which Castle was involved was too remote to bear a sufficient relationship to any traditional maritime activity. As a result, Petitioner has failed to establish the second prong of the connection test, and ultimately, admiralty jurisdiction.

### IV. Conclusion

For the reasons set forth herein, the Court **GRANTS** Respondent's Motion to Dismiss for Lack of Subject Matter Jurisdiction and **DISMISSES** Petitioner's Complaint from the docket of this Court. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties and to publish it on the Court's website.